[S. F. No. 8890.  In Bank.—May 29, 1919.]

## HYMAN BROTHERS BOX & LABEL COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—RIGHTS OF APPLICANT FOR COMPENSATION—LAW IN FORCE AT TIME OF INJURY.—The rights of an applicant for compensation under the Workmen's Compensation Act must be measured by the act in force at the time of the injury.

[2] ID.—WILLFUL MISCONDUCT—DETERMINATION OF QUESTION—JURISDICTION OF COMMISSION.—The determination as to whether or not the described actions of an employee amount to willful misconduct goes to the jurisdiction of the Industrial Accident Commission.

[3] ID.—WILLFUL MISCONDUCT DEFINED. — Willful misconduct means something more than negligence, and does not include every violation or disregard of a rule, but it cannot be doubted that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of misconduct and that where the workman deliberately violates the rule, with knowledge of its existence and of the dangers accompanying its violation, he is guilty of willful misconduct.

[4] ID.—INJURY TO MINOR EMPLOYEE—REACHING OF HAND INTO MOVING PRESS—VIOLATION OF RULE—SUDDEN IMPULSE—RIGHT TO COMPENSATION.—Under the Workmen's Compensation Act, an employee of the age of twenty years who was injured while operating a printing-press by having his hand caught between the bed of the press and the platen in reaching into the machine when in motion to remove some fallen cards, was not guilty of willful misconduct, notwithstanding warning had been given him to never reach into the machine in motion, where it appeared that at the rate of the running of the press, the operator upon seeing a card fall was given but the smallest degree of time for determination as to whether or not he should reach for the same.

[5] ID.—AVERAGE WEEKLY EARNINGS OF INJURED EMPLOYEE—BASIS OF COMPUTATION.—Under section 17c of the Workmen's Compensation Act, the Industrial Accident Commission has no power in the case of an injury to an employee in his twenty-first year to compute the compensation on the basis of probable wages which the employee might obtain long after reaching the age of twenty-one years, since the word "after" as used in such section providing "if the injured employee is under twenty-one years his average weekly earnings shall be deemed to be the weekly sum that under ordinary circumstances he would probably be able to earn 'after' attaining the age of twenty-one years," means "at" the age of twenty-one years.

PROCEEDINGS on Certiorari to review an award of the Industrial Accident Commission.   Award annulled.

The facts are stated in the opinion of the court.

E. L. Stockwell and Redman & Alexander  for Petitioners.

Christopher M. Bradley and Warren H. Pillsbury  for Respondents.

MELVIN, J.—*Certiorari* to review the award of the Industrial Accident Commission in favor of Fred Weiss, who was injured by having his hand caught in a printing-press to which he was "feeding" pieces of pasteboard that were cut by the machinery into proper shape for use in the making of pasteboard boxes.

[1] The injury was suffered by the applicant for compensation in the month of December, 1917, and his rights must be measured by the Workmen's Compensation Act of 1913, as amended in 1915, which was then in force.

The applicant was twenty years of age at the time of the injury.  He had worked for the Hyman Brothers Box & Label Company, generally as a "press-feeder," three times, his terms of employment aggregating about nineteen months. He had worked for another corporation, also as a pressfeeder, for two years and two months.  It thus appears that he was an experienced workman almost of the age of majority.

The press at which Mr. Weiss was working when he was injured was equipped with a stationary upright plate called the "bed" and a plate called the "platen" which repeatedly opened and closed against the "bed."  In operating the press he stood in front of it, removing the cut pasteboard with his left hand and inserting the uncut sheets with his right hand.  Sometimes a cardboard sheet would slip off the bed of the press and fall into the body of the press, and sometimes some of the uncut pieces would fall into the press from the "feed-board" upon which the operator kept a supply. In such case the press could be stopped at once by moving a lever and the card or cards could be removed without danger. The injury to the applicant occurred while he was reaching into the body of the moving press for a sheet or sheets which

had fallen. Asked by the examiner if that was a proper thing for him to do, he said, "Well, it might not have been," and to the question, "Why not?" he replied as follows: "When I first came to Hyman Brothers Box and Label Company, I was told not to grab any sheets, when I first came there. That was three or three and a half or four years ago. Then I left Hyman Brothers again and came back, after feeding that many years, and being that I was experienced in feeding, I was not told that any more." Following this statement the questions and answers were as follows:

"Q. You knew then that that instruction had been given you and you knew it was not a proper thing to do? A. Yes.

"Q. Had anybody ever seen you do that before, any of the foremen? A. I don't know. I couldn't tell you that.

"Q. You had done it two or three times before? A. Yes, sir.

"Q. And you did it this time? A. Yes, sir."

At another place in the return to the writ his testimony is reported as follows:

"Q. Mr. Weiss, if you were reaching into that machine to take out loose cards that had fallen in there while the machine was in motion, you were doing something you knew was not exactly proper, weren't you? A. The loose ones, you mean?

"Q. Yes. A. Yes, sir.

"Q. But nobody had said anything to you in the last year or two about doing that? A. No, sir.

"Q. But when you first came there, as I understand you, you were instructed never to reach into the machine? A. When I first started to learn. That was the first place I fed. I was just starting to learn to feed at that time.

"Q. What did they say to you? A. They told me, 'You don't want to put your hand into the machine if any sheets fall down, because you can get more sheets than you can hands.'

"Q. What would have been the right thing to have done if those sheets had fallen in there? A. Stop the machine. It didn't do any harm and you could still keep running."

In his application to the Industrial Accident Commission for compensation Mr. Weiss had described the occasion of the injury as follows: "Some sheets of box board dropped from the feed-board into the press and applicant reached with his

left hand to catch them, the left hand and arm being caught between bed and platen.''

The Industrial Accident Commission found that in attempting to catch the card "the employee acted instinctively without reflection and such act did not constitute willful misconduct and that, therefore, said injury was not caused by willful misconduct of the employee." Petitioners attack this finding as contrary to the evidence. This, they say, is the case of an employee who, with full appreciation of the danger, violated specific instructions given him for his own protection. The question before us, therefore, is whether or not the described actions of the employee amounted to willful misconduct. **[2]** That an answer to such a problem goes to the jurisdiction of the Industrial Accident Commission is settled by decisions of this court. (*Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 1 I. A. C. 669]; *Fidelity and Deposit Co.* v. *Industrial Accident Com.,* 171 Cal. 728, [L. R. A. 1916D, 903, 154 Pac. 834].)

The doctrine that an unpremeditated and impulsive act in violation of orders may not be willful misconduct finds some support in the authorities, but usually nonage is an element of the decisions in which such doctrine has been upheld. It seems to us, however, that the age of the person injured does not necessarily make a material difference. The tendency to recover something falling from a machine; to reach for a hat blown off the head by a sudden gust of wind; to apply the brakes to a "skidding" automobile—in short to perform acts of many sorts upon the impulse of the moment, is not the failing of youth alone. The true tests to be applied have reference to the nature of the work being performed and the circumstances of each particular case. This court has been at pains more than once to define "willful misconduct." **[3]** Perhaps the best definition (and, incidentally, the one cited by both parties to this controversy) is the one found in the opinion in *Great Western Power Co.* v. *Industrial Accident Com.,* 170 Cal. 180, 189, [149 Pac. 35, 40]. The court used this language: "Willful misconduct means something more than negligence. It does not include every violation or disregard of a rule. (*Casey* v. *Humphries* [1913], 6 B. W. C. C. 520.) But it cannot be doubted that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of

misconduct and that where the workman deliberately violates the rule, with knowledge of its existence and of the dangers accompanying its violation, he is guilty of willful misconduct. (*Brooker* v. *Warner,* 23 L. T. R. 201.)'' In that case (known in the profession as the ''Mayfield case''), the applicant had entered upon the duty of handling wires used for the transmission of high tension electric current, without putting on the nonconducting gloves which the rules of his employer, well understood by him, required him to wear at such times. From the very nature of the act it was one which involved deliberation and a willful disobedience of a salutary rule. There was no room for the application of the doctrine of sudden impulse. [4] The facts of the present case are vastly different. Admittedly, the petitioner Weiss knew the rule. Admittedly, he did something in apparent violation of the rule, which, if it had been the result of deliberate intention, would have amounted to willful misconduct; but the circumstances were such that any person, experienced or not, might have impulsively put himself in jeopardy as this young man did, without any intent to violate a known rule. There is evidence to support the conclusion reached by the Industrial Accident Commission, and we are of the opinion that upon this branch of the case a correct conclusion was reached. At the rate of the running of the press, the feeder was given at most a little more than one second for the entire operation of removing each cut piece of cardboard and inserting one that was uncut. Upon seeing a card fall into the machinery he was given but the smallest degree of time for deliberation and for determining whether or not he should reach for the pasteboard. It needs no argument to convince a court that a person in such a situation will not be judged by the same standards as one who breaks a rule by means involving time for reflection and excluding the possibility of sudden impulse. It is doubtless true that such an accident might come under the doctrine of the ''Mayfield case,'' as, for example, where an operative habitually and intentionally ignored the rule; and if the commissioners had believed the testimony of one witness who stated that after the injury Weiss admitted reaching into the moving press for fallen cards hundreds of times before, a finding of willful misconduct would have resulted. But the applicant denied the interview and the alleged statements attributed to him.

Therefore, we cannot disturb the. finding made by the triers of facts.

The authorities sustain the views expressed above. In *Whitehead* v. *Reader* [1901], 2 K. B. 48, it was held that where a man tried to replace a belt which had slipped from the machinery, such act may be regarded as venial, and not willful misconduct on his part. In *McNicholas* v. *Dawson* [1899], 1 Q. B. 773, it was announced that each case must depend upon its own peculiar facts and that the breaking of rules does not necessarily constitute serious misconduct. In *Peru Basket Co.* v. *Kuntz* (Ind. App.), 122 N. E. 349, it was held that an employee with defective eyesight, who inadvertently placed his hand contrary to directions in a place where it was caught by a cutting machine, was not guilty of willful disobedience.

Petitioners have cited many authorities to the effect that where a servant goes outside of the scope of his authority, although still upon the employer's premises, he may not recover for any injury. Typical of such decisions is *Williamson* v. *Industrial Accident Com.*, 177 Cal. 715, [171 Pac. 797]. The facts there disclosed were these: The applicant for compensation had gratuitously undertaken to clean a light well. She was injured while performing this task, but it was held that as she was not engaged to do that sort of work she was not entitled to compensation for her injuries. Undoubtedly that and similar authorities announce a correct rule, but one having no application to the facts now before us. Not one of them involves the conduct of an employee confronted with a sudden and unexpected situation furnishing almost irresistible occasion for impulsive action.

Petitioners' only other objection is to the amount of the award which, it is asserted, was in excess of that which the commission was empowered to give. With this view we agree.

Section 17c of the Workmen's Compensation Act is in its essential parts as follows: "If the injured employee is under twenty-one years of age . . . his average weekly earnings shall be deemed . . . to be the weekly sum, that under ordinary circumstances he would probably be able to earn after attaining the age of twenty-one years, in the occupation in which he was employed at the time of the injury, or the occupation to which he would reasonably have been promoted,

if he had not been injured." [Stats. 1915, p. 1086, sec. 6.] The Industrial Accident Commission made the award upon the assumption that "after attaining the age of twenty-one years" means a reasonable time after majority. It was the theory that if the wages being earned at the time of injury were essentially "boy's wages," then the commission might base the amount of compensation upon "the adult's wages which the same individual would be expected to reach within the few months, or perhaps even a few years after passing the age of twenty-one."

[5] With this view of the law we cannot agree. The infirmity of the rule must be apparent when we remember that there is no rule by which the exact difference between "boy's wages" and "man's wages" may be computed. This applicant was in his twenty-first year at the time of the injury. Under the statute quoted above the commission was bound to find his probable earnings *at* the age of twenty-one years. Such an interpretation of the word "after" is fully in accord with sound reason and authority. For example, bequests to take effect "after death," vest at death. (*In re Swinburne,* 16 R. I. 208, [14 Atl. 850]; *Downing* v. *Wherrin,* 19 N. H. 9, [49 Am. Dec. 139]; *Atwell's Exrs.* v. *Barney,* Dud. (Ga.) 207.) In 2 C. J. 395, among the definitions of "after" given are "as soon as; at or immediately after; on; simultaneously; upon." That the framers of the Compensation Act intended the word "after" to mean "at" is obvious when we have in mind that different parts of a statute are to be so construed as to make them consistent and harmonious, giving proper effect to each of them. If the young man had been twenty-one years and one day old when he was injured, the commission would have been under the necessity of fixing his compensation in accordance with his wages *at that time.* To hold that because he was a few months under the age of twenty-one a much more flexible rule should apply would be an interpretation of the statute in a manner out of harmony with the part having reference to adults. Therefore, we must hold that the Industrial Accident Commission had no power to compute the compensation upon the basis of probable wages which the applicant might obtain long after reaching the age of twenty-one years.

The award is annulled and the matter is remanded to the Industrial Accident Commission to the end that such proceed-

ings may be taken as are not inconsistent with the views herein expressed.

Shaw, J., Lennon, J., Olney, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.