HELEN A. BUTCH v. C. H. SHAVER.[1]

October 7, 1921.

No. 22,505.

**Workmen's Compensation Act — loss of eye.**

1. Where an employe sustains a personal injury by accident arising out of and in the course of her employment which irrecoverably destroys the sight of her right eye, though with extra artificial means she

[1] Reported in 184 N. W. 572.

may have fair vision, she is entitled to compensation as for the loss of the eye, under the provisions of section 8207, G. S. 1913, as amended by chapter 442, Laws of Minnesota for 1919.

**Same—accident arising from employment.**

2. In this proceeding, under the Workmen's Compensation Act, the testimony supports the finding that the injury complained of arose out of and in the course of respondent's employment.

Upon the relation of C. H. Shaver the supreme court granted its writ of certiorari directed to the district court for Hennepin county and the Honorable Frank M. Nye, one of the judges thereof, to review the proceedings in that court under the Workmen's Compensation Act brought by Helen A. Butch as employe, against relator as employer. Affirmed.

*Cray & Eaton,* for relator.

*A. A. Tenner,* for respondent.

QUINN, J.,

Certiorari to review a judgment of the district court of Hennepin county, decreeing that respondent is entitled to judgment against relator for compensation under the Minnesota Workmen's Compensation Act, at the rate of $12.52 per week for 100 weeks, beginning July 3, 1920, with interest, and $182.55 as expenses, and costs and disbursements.

It appears that the respondent, Helen A. Butch, a married woman 16 years of age, entered into a contract of employment with the relator at Minneapolis as a kitchen servant in a restaurant which he operated at the railroad station in Spooner, Wisconsin. Respondent's working hours were from 11 o'clock in the morning until 7 p. m. during the serving of meals upon the arrival of trains. Her husband was employed at the same place. The employes, including respondent, were permitted to use the laundry in the basement of a hotel operated by relator, for doing their personal laundry. For her services respondent received $40 per month and board and room, aggregating $80 per month. Relator furnished the laundry fully equipped with tubs, water, stove, clothes line, soap, etc., for use by his employes.

Upon the trial respondent introduced testimony tending to show in

effect that on June 26 while engaged in the course of her employment she was directed by the management of the restaurant to wash the dish towels; that accordingly she went to the laundry in the basement of the hotel and started to wash the towels and at the same time included some of the clothes of herself and husband; that when she had finished washing she undertook to replenish the fire in the laundry stove, and that, while in the act of breaking a stick of wood for the fire, a splinter flew into her right eye inflicting the injury complained of. The respondent also testified that she was required to and did wash dishes, scrub floors, prepare vegetables, wash dish towels and do other kinds of work about the restaurant.

Dr. Wood, an eye specialist, was the only doctor examined upon the trial. He testified, in effect, that he first met and examined respondent on July 2; that at that time there was a small wound on the cornea of the right eye, with marked inflammation; that the wound was leaking fluid and the lens back of the cornea was opaque, cataractous, shutting off the complete view so she had only shadows in the eye; that the lens was out of place and there was a wound in the lens itself, letting the fluid into the lens making it opaque, a traumatic cataract; that respondent was then placed in a hospital and on July 8 he removed the lens, which was absolutely necessary; that respondent had no vision at all in that eye, so when one would shake his hand in front of the eye she would see the shadow; that the lens shut off the light and vision from the back of the eye; that when he removed the lens there was still a little splinter there that came out with it; that on account of the absence of the lens she is unable to use the right eye for the purpose of seeing; that the eye will not improve at all, though with extra artificial means she will have fair vision, but without glasses the eye is practically useless; that the traumatic condition is one of the common causes of such conditions.

The trial court found as facts, that the respondent while in the course of her employment was engaged in washing clothes in defendant's laundry, and, while in the act of breaking a piece of kindling to keep the fire alive in the laundry stove, a splinter flew and struck her right eye with great force and violence and penetrated the same, "thus and there-

by irrecoverably destroying the sight of plaintiff's right eye." This find-
ing is supported by the testimony.

It is contended on behalf of relator that respondent is not entitled
to compensation as for the loss of an eye; that the lens does not furnish
sight but accommodation to distance; that she could see with the in-
jured eye to some extent after the removal of the lens and with prop-
erly fitted glasses would have a two-thirds vision. We are unable to
concur with this proposition.

Section 8207, G. S. 1913, as amended by chapter 442, p. 520, Laws
1919, contains a schedule of compensation for injuries sustained. It
provides "for the loss of an eye, sixty-six and two-thirds per centum of
daily wages during one hundred weeks. * * * In all cases of perma-
nent partial disability within the foregoing schedule, it shall be con-
sidered that the permanent loss of the use of a member shall be equiva-
lent to and draw the same compensation as the loss of that member."
The foregoing provisions apply and we hold that compensation so fixed
and determined will not be diminished by reason of the fact that the
disability may in a measure be overcome by artificial means.

There was ample testimony to support the finding that the injury
complained of arose out of and in the course of respondent's employ-
ment.

Affirmed.