(No. 5970. March 7, 1934.)

C. B. KELLEY, Employee, Respondent, v. CARL PROUTY, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[30 Pac. (2d) 769.]

Paris Martin, for Appellants.

E. B. Smith, for Respondent.

WERNETTE, J.—On November 17, 1921, the Industrial Accident Board approved an agreement entered into by the State Insurance Fund, the insurance carrier, and the injured employee, C. B. Kelley, dated November 12, 1921, designated a "recommendation," in words and figures, as follows:

"On February 9, 1921, the claimant suffered an injury to the head which resulted in practically the loss of vision.

"As shown by the reports of Dr. Boeck and Dr. Nourse, the claimant can distinguish no object whatever with the right eye; vision of left eye is but 8/200 or 1/25 normal.

"The Workmen's Compensation Law of the State of Idaho provides for a specific indemnity of four hundred weeks for total disability.

"In computing the amount of money due under specific indemnities, the Attorney General has ruled that fifty-five per cent (55%) of the average weekly wages shall apply, but should the fifty-five percentum exceed, the maximum shall apply.

"It is therefore recommended that the specific indemnity of $4,800.00 (400 weeks at $12.00 per week) be paid, thereafter $6.00 per week to be allowed, unless disability ceases. As payments amounting to 27 weeks or $324.00 have been paid, Total Temporary, to 8–20–21, this amount has been deducted from the 400 weeks ($4,800.00). The payments to

be made during disability, but not including the first seven days, at the rate of $52.00 per month, until the entire amount of this specific indemnity ($4,800.00) is consumed. (Thereafter $6.00 per week.) Regularly monthly payments are now being made the first of each month and we respectfully recommend the case be closed, subject to the provisions of Section 6269, as we (The State Insurance Fund) desire a review subjecting a change of the above terms.''

Pursuant to such agreement, so approved, payments were made to the injured employee, C. B. Kelley, until June, 1928, totalling $4,580. On September 24, 1931, the appellants filed a petition to reopen and review the award on the ground of a change in condition of respondent, from one of total disability to partial disability or no disability. On hearing before the board an order was entered denying relief as prayed for in the petition, which order was affirmed by judgment of the district court. This appeal is prosecuted from the judgment of the district court affirming the order of the board.

On February 19, 1921, respondent, while employed as a hod-carrier by appellant, Carl Prouty, received a head injury by striking his head against a beam during the construction of a building. This head injury so affected the vision of respondent's left eye that without glasses he had only 8/200 visual acuity, or 1/25th normal vision. From birth respondent had been afflicted with convergent squint of the right eye, so that he had a total loss of useful vision of the right eye.

The State Insurance Fund ceased making payments to respondent on June 26, 1928, and on or about July 15, 1928, it requested respondent to submit to an examination by Doctor Cowles, an eye specialist. On July 18, 1928, the doctor did make a partial examination, however, respondent would not submit to dilation of the pupils of the eyes so a thorough examination could be made and, as a consequence, Doctor Cowles was unable to make a positive report as to the percentage of vision respondent had with his left eye. Not until October 9, 1931, after the petition to reopen and

review was filed, was another examination made. At that time, upon a very thorough examination by Doctor Cowles, representing appellants, and Doctor Merrill, representing respondent, both doctors being eye specialists, it was found that respondent, without glasses, had visual acuity in his left eye of from 10/200 to 20/200 or about 10 per cent normal vision; that with the aid or use of glasses the vision was between 20/30 and 20/20 or about 95 per cent normal vision.

The record further discloses that respondent, since May, 1931, has been steadily employed as a janitor in a large department store in Boise, Idaho, at a wage of $100 per month. Prior, commencing some time in February, 1925, until May, 1931, he was employed in various capacities as a laborer, similar to the work he was performing prior to his injury, receiving as wages from $3.50 to $4 per eight hour day. From the time of his injury until February, 1925, respondent did not perform any labor. Since he has commenced working, after his injury, he has been able to carry on his employment as well as before the injury, but has been required to wear glasses.

Respondent takes the position that the board did not have jurisdiction, in that the petition filed and relied on by appellants did not state sufficient facts showing any change in the condition of respondent, so as to authorize the board to review the agreement or award theretofore made, under sec. 6269, I. C. S., 1919, which was later amended and is now sec. 43–1407, I. C. A., citing *Van Blaricom v. Export Lbr. Co.*, 52 Ida. 459, 16 Pac. (2d) 990. While we could not recommend the petition as a model to be followed, with reference to the allegations of fact on which jurisdiction is based, we believe that the allegations of fact are sufficiently set forth, as to a change of condition, to apprise the respondent of the claim that respondent's condition had changed from that of total disability to only partial or no disability at all, and is sufficient to give the board jurisdiction. In the case relied upon by respondent the court says that it is to be borne in mind that the Workmen's Compen-

sation Law is to be liberally construed to further its object and purposes, and the proceedings thereunder are not to be governed by strict procedure. (*In re Bones*, 48 Ida. 85, 280 Pac. 223; *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068; *Ramsay v. Sullivan Min. Co.*, 51 Ida. 366, 6 Pac. (2d) 856.)

 Next, respondent contends that the board did not have jurisdiction to entertain this proceeding in that the respondent sustained the injury, for which he was awarded compensation, more than four years prior to the filing of the application herein. At the time of the accident C. S., sec. 6269, which was then in force and effect, read as follows:

"On the application of any party on the ground of a change in conditions, the board may at any time, but not oftener than once in six months, review any agreement or award, and on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded, subject to the maximum and- minimum provided in this chapter, and shall state its conclusions of fact and rulings of law, and immediately send to the parties a copy of the award, but this section shall not apply to a commutation of payments under section 6240."

In 1931, said section was amended and is now found as sec. 43-1407, I. C. A., limiting the time for the filing of an application to show a change of condition, by any party, to within four years of the date of the accident causing the injury. The question arises, was the provision limiting the time to file an application by reason of change in condition, within four years, retroactive? There is no express provision in the 1931 amendment, now sec. 43-1407, I. C. A., making the law retroactive. This court has repeatedly held that no statute should be construed to be retroactive unless such intention on the part of the legislature is clearly expressed. (*Lawrence v. Defenbach*, 23 Ida. 78, 128 Pac. 81; *Bellevue State Bank v. Lilya*, 35 Ida. 270, 205 Pac. 893; *Nampa & Meridian Irr. Dist. v. Barker*, 38 Ida. 529, 223 Pac. 529; *Cook v. Massey*, 38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200.)

Under the statute, before the amendment, the substantive rights of the respective parties were kept within the control of the Industrial Accident Board indefinitely, while under the amendment such control is limited to a period of four years from the date of the accident. In the instant case compensation was being paid pursuant to a contract entered into between the parties, which was approved by the board, and the law in force as of the time when the contract was entered into and approved became a part of the contract the same as if expressly written into the same. (*Straus* v. *Ketchen, ante*, p. 56, 28 Pac. (2d) 824; *Foster* v. *Department of Labor and Industries*, 161 Wash. 54, 296 Pac. 148, 73 A. L. R. 1012; *Holmberg* v. *City of Oakland*, 55 Cal. App. 270, 203 Pac. 167.) In the latter case the court uses this language:

" . . . . the state of the law at the time of the injury is to be taken as the measure of the right of recovery of the injured person. It was so held by our Supreme Court in the case of *Hyman Bros. B. & L. Co.* v. *Industrial Accident Comm.*, 180 Cal. 423, 181 Pac. 784, and the rule therein stated follows in the line of the general authority in other jurisdictions."

The contract between the parties expressly provided that payments to be made thereunder were conditional dependent upon disability; if disability ceased to exist at any time no further payments were required. In *State* v. *General Acc. Fire & Life Assur. Corp.*, 134 Minn. 21, 158 N. W. 715, Ann. Cas. 1918B, 615, the Minnesota court, in a very able and well considered opinion, fully sets forth the law as we believe applicable to the case at bar. There is nothing to indicate that the legislature intended to make the 1931 act retroactive, in view of the particular provisions of the Workmen's Compensation Law existing prior to the amendment and rights that had accrued to numerous parties prior thereto. It would appear that had the legislature intended that the 1931 act should operate retroactively it would have expressly so provided. Respondent cites the case of *Mulvey* v. *City of Boston*, 197 Mass. 178, 83 N. E. 402, 14 Ann.

Cas. 349, in support of his position. We believe that that case is readily distinguishable from the case at bar, but in any event we believe that the Minnesota case more correctly states the law in harmony with our own previous decisions and, consequently, hold that the board was not deprived of jurisdiction by reason of the 1931 amendment.

We now reach the most serious and important question to be determined in this case. The Industrial Accident Board, in its findings of fact, specifically found:

"That on the 12th day of November, 1921, the day the said agreement between the claimant and the defendant, State Insurance Fund, was entered into, the claimant with the aid of corrective glasses could and did see sufficiently to sign said agreement and to move about as the ordinary man does in the transaction of his business; that the claimant now has, and ever since the day of his birth has had, total loss of useful vision of the right eye; that he now has, and ever since the 26th day of June, 1928, has had, only between 20/200 and 10/200 visual acuity of his left eye.

"That with the aid of corrective glasses the claimant is now, and ever since some time prior to the 26th day of June, 1928, has been, able to see sufficiently to do the work of an ordinary laboring man, and since some time prior to the said 26th day of June, 1928, with the aid of such corrective glasses has been doing the work of an ordinary laborer and receiving the usual wages being paid for the kind of labor he performed.

"That there has been no change in the condition of the claimant's eye sight or visual acuity except the ordinary change due to advancing years and necessitating stronger corrective glasses.

"That the claimant is not now, nor was he on the 12th day of November, 1921, or ever since said date, totally disabled for work on account of the injury he received on said 9th day of February, 1921, but that he is 'industrially blind.' "

Appellants contend that the district court erred in granting judgment affirming the findings, conclusions and award

of the Industrial Accident Board, which was to the effect that there had been no change in the condition of respondent's eyesight. There is very little if any dispute as to the controlling facts in this case, the same being practically conceded by all parties, so it becomes, primarily, a question of applying the law to the undisputed evidence.

From the time of respondent's birth he had a total loss of useful vision of his right eye. The board so found and the finding is amply supported by the evidence. Before the injury complained of respondent, apparently, had fairly good eyesight with his left eye so that he was able to carry on his work without the aid of glasses. A short time after his injury his left eye was examined by an eye specialist and it was found that the vision of his left eye was about 1/25th of normal, without the aid of glasses. This finding formed the basis of the agreement approved by the board through which the respondent was paid compensation. The board specifically found that on November 12, 1921, the date of the contract, the respondent, with the aid of corrective glasses, could and did see sufficiently to sign the contract and move about as the ordinary man does in the transaction of his business, but the record is silent as to the exact percentage of vision respondent had at that time with the aid of glasses. The record does show affirmatively that the respondent was not able to do the work of an ordinary laboring man until some time during the year 1925, and from the time that he first commenced work after said injury, as heretofore stated, he was capable, with the aid of glasses, of doing various kinds of work similar to the class of work he was doing at the time of his injury, and also a higher class of work requiring as good or better eyesight than is necessary for a hod-carrier. It is conceded that since about June, 1928, respondent has had 10/200 to 20/200 visual acuity of his left eye or about 1/10th normal vision, but with glasses he has had about 95 per cent normal vision and has been able to do the work of an ordinary laborer. Between 1921 and 1928 the visual acuity of respondent's left eye had improved from approximately 1/25th of normal

vision to 1/10th of normal vision without the aid of glasses, and in 1928, with the aid of glasses, he had nearly normal vision. It is to be noted that the board in making its findings relative to the extent of the vision of respondent's left eye, as of the time when the contract was entered into in 1921, and June, 1928, did not use the same standard of comparison. In 1921 the board found he could, with the aid of glasses, sign the contract and move about as an ordinary man does in the transaction of his business, but they did not find that he could see well enough to do the ordinary work of a laborer, as he was capable of doing in 1928. The only reasonable inference to be drawn from the two findings, supported by evidence, is that at the time when the contract was entered into he was not able to see sufficiently to do the work of an ordinary laboring man, but later, in 1928, his eyesight had improved sufficiently, with the aid of glasses, that he could. It is true that the board found that on November 12, 1921, he was not totally disabled for work, but they did not find that on said date and up to 1928 he could work as an ordinary laboring man.

The term "industrially blind" is not defined in our Workmen's Compensation Law; it is a term of comparatively recent origin. The specific percentage of eyesight that must be lost before a man is considered industrially blind varies considerably. From a reading of the cases of various jurisdictions it cannot be said that there is any definite standard for industrial blindness. (*Eureka Coal Co. v. Melcho,* 85 Ind. App. 552, 154 N. E. 774; *Burt v. Clay,* 207 Ky. 278, 269 S. W. 322.) And this court in *McDonald v. Treasurer of State of Idaho,* 52 Ida. 535, 16 Pac. (2d) 988, states:

"On July 29, 1929, subsequently to the accident, appellant, without glasses, had a visual acuity or vision of 7.4 per cent. With the glasses he was then wearing he had at that time 20/40ths. Without glasses he was industrially blind, as a visual acuity or vision of 8 per cent or less constitutes industrial blindness."

The court, in making said statement, had in mind the particular case at hand, where the board found from undisputed evidence that appellant's eyesight without glasses was but 7.4 per cent and that he was industrially blind, and undoubtedly did not by said statement intend to fix a definite per cent of vision as a standard to be considered as constituting industrial blindness. In other words, it was not the intention of the court to say that 8 per cent of normal vision, without glasses, constituted a standard for industrial blindness. In any event, we now hold that no particular percentage of normal vision can or should be used as a standard to constitute industrial blindness, but that each case must depend upon its particular facts and circumstances; that it would be better and advisable to determine in each case the degree of permanent loss of sight of the eye or eyes in accordance with the terms of our Workmen's Compensation Law, as was intended, rather than loosely using the term "industrial blindness," which term does not carry with it any definite standard.

The respondent never having had sight in his right eye, then the question arises, did the respondent suffer the total and permanent loss of sight of his left eye as a result of the injury? Appellants put forth the proposition that a one-eyed employee receiving an injury causing the total and permanent loss of sight of the other eye is not entitled to compensation for total disability. There is no merit in such contention. Without quoting at length, that question was definitely settled in the case of *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068, holding to the effect, that when an employee who has previously lost the sight of one eye, then through injury loses the sight of the remaining eye, he has suffered total disability as the result of such injury. That has remained the law in this state down to and including the time when respondent was injured. The law in that regard was not changed until 1927, chap. 126, Session Laws, 1927, so was not in force at the time of the injury to respondent and, therefore, is not applicable to his case.

The primary question is, did the respondent, by reason of the injury, suffer the total and permanent loss of sight of his left eye. and thus become totally disabled. In answering that question it must be decided to what extent the use of corrective glasses should or must be taken in consideration · because of the fact that without glasses the evidence discloses that he is able to do but very little if any work in the field of labor, but with the aid of glasses he has almost normal vision in his left eye and is capable of carrying on work as good as he ever did.

In the case of *McDonald v. Treasurer of State of Idaho, supra,* this court said:

"It is the contention of appellant that the use of glasses cannot be taken into consideration in determining whether appellant is industrially blind or in determining his compensation. There is a conflict of authority upon this question, as a result, in some jurisdictions, of statutory provisions relating to the use of artificial appliances. We have no such statute, and are of the opinion that the weight of authority and the better rule, in the absence of statute, sustain appellant's contention. (*Alessandro Petrillo Co. v. Marioni,* 3 W. W. Harr. (33 Del.) 99, 131 Atl. 164; *Juergens Bros. Co. v. Industrial Commission,* 290 Ill. 420, 125 N. E. 337; *Androlonis v. Philadelphia & Reading Coal & Iron Co.,* 280 Pa. 71, 124 Atl. 336; *Globe Cotton Oil Mills v. Industrial Acc. Comm.,* 64 Cal. App. 307, 221 Pac. 658; *Marland Refining Co. v. Colbaugh,* 110 Okl. 238, 238 Pac. 831; *Butch v. Shaver,* 150 Minn. 94, 184 N. W. 572; *Johannsen v. Union Iron Works,* 97 N. J. L. 569, 117 Atl. 639; *Graf v. National Steel Products Co.,* 225 Mo. App. 702, 38 S. W. (2d) 518.)"

The question as to whether the use of glasses should be taken in consideration in determining the degree of disability for work really was not before the court in that case for the reason that McDonald was permanently disabled on account of the loss of sight, with or without glasses. Quoting from the opinion:

"It seems to be established that prior to the accident on June 22, 1929, resulting in the loss of his left eye, appellant

was following and able to follow his usual and ordinary occupation as a woodsman, without glasses, although at times he wore glasses. Shortly after the accident his visual acuity or vision in the right eye was not greater than 7.4 per cent without glasses and 20/40ths with glasses he was then wearing, and was unable thereafter to pursue his former occupation or other remunerative employment, and testified, among other things, that it was with great difficulty that he was able to find his way about or to feed himself.''

Said statement was amply and fully supported by the evidence.

There are two well defined lines of cases, one to the effect that corrective glasses are not to be taken into consideration in determining the extent of disability and the other that the use of glasses may and should be taken into consideration in determining disability. The first case cited by the court in *McDonald v. Treasurer of State of Idaho, supra,* in support of the position that glasses are not to be taken into consideration, *Alessandro Petrillo Co. v. Marioni,* 3 W. W. Harr. (33 Del.) 99, 131 Atl. 164, clearly defines the line of demarcation between the authorities. In that case the Delaware statute under consideration read as follows:

''(c) For all permanent injuries of the following class, the compensation, regardless of the earning power of such injured employee after such injury shall be as follows: . . . . For the loss of an eye fifty per centum of wages during one hundred and thirteen weeks. . . . . For the loss of a fractional part of the vision of an eye, the compensation shall be for such percentage of the total number of weeks allowed for the total loss of the use of an eye under this subsection (c) as the loss suffered bears to the total loss of an eye.''

The court said:

''The action of the Accident Board in basing the award on the loss of vision without the use of corrective lens is amply supported by authority. . . . .

"A number of cases are cited to us from the jurisdictions of New York, Pennsylvania and Michigan as having arrived at different conclusions from the one herein reached. It may be sufficient to suggest that these cases are determined upon their particular statutory enactments. Most or all seem founded upon statutes based upon the theory that compensation was only payable in cases such as the present one when the accident led to loss of earning power. (Citing cases.)

"The Delaware Act makes a permanent injury to an eye compensable 'regardless of the earning power of such injured employee after such injury.' "

The Delaware court clearly points out that those cases holding that corrective glasses should be taken into consideration in fixing the amount of disability are founded upon statutes based upon the theory that compensation is payable only in cases when the accident results in loss of earning power, while the cases holding *contra* are founded upon statutes making a permanent injury to an eye compensable regardless of the earning power of such employee after injury.

In the case of *Juergens Bros. Co. v. Industrial Com.*, 290 Ill. 420, 125 N. E. 337, the opinion was based on a provision of the statute as follows:

"In addition to compensation during the period of temporary total incapacity for work resulting from such injury, . . . . for the loss of the sight of an eye, fifty per centum of the average weekly wage during 100 weeks."

Additional compensation was allowed for the loss of the eye, but the same was not allowed by reason of any loss of earning power or incapacity for work.

In *Androlonis v. Philadelphia & Reading Coal & Iron Co.*, 280 Pa. 71, 124 Atl. 336, the employee had a practical loss of the vision of both eyes. Even with the use of glasses there was only 1/15th of normal vision in his left eye, the right eye being totally blind. What little work the employee was able to do was done largely by the sense of feeling. In other words the employee did not have sight for work, either with or without glasses, thus the court held

that the employee had lost the permanent use of the sight of both eyes.

In the case of *Globe Cotton Oil Mills v. Industrial Acc. Com.*, 64 Cal. App. 307, 221 Pac. 658, a workman received an injury necessitating the removal of the lens of the eye, in which condition he had but 1/100th vision, having previously lost sight in his other eye. Determination of the Industrial Accident Commission that percentage of permanent disability was 19¼ per cent and awarding a named sum for 77 weeks, based on his earning capacity, was not an abuse of discretion, though with the aid of glasses his vision was restored to practically normal. It at once appears that the commission, as well as the court, must have taken in consideration the use of corrective lens in fixing the percentage of permanent disability.

In *Marland Ref. Co. v. Colbaugh*, 110 Okl. 238, 238 Pac. 831, the decision was based on the following provision of the law:

"For the permanent partial loss of use of a member or sight of an eye, sixty-six and two-thirds per centum of the average weekly wage during the portion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye which the partial loss of use thereof, bears to the total loss of use of such member or sight of an eye."

Said provision provides for compensation not taking into consideration the disability for work.

In the case of *Butch v. Shaver*, 150 Minn. 94, 184 N. W. 572, compensation was allowed under the following provision of the statute:

"For the loss of an eye, sixty-six and two thirds per centum of daily wages during one hundred (100) weeks. . . . . In all cases of permanent partial disability (within the foregoing schedule), it shall be considered that the permanent loss of the use of member shall be equivalent to and draw the same compensation as the loss of that member."

The question of ability to work was not involved.

In the case of *Johannsen v. Union Iron Works*, 97 N. J. L. 569, 117 Atl. 639, compensation was awarded for permanent loss of one-third of an eye. The particular provision of the statute upon which the decision is based is not set forth in the opinion. Upon an examination of the statute, however, upon which the award was based, we find that the New Jersey statute set forth specific indemnities for certain injuries, including the loss or partial loss of an eye, without regard to disability for work.

In *Graf v. National Steel Products Co.*, 225 Mo. App. 702, 38 S. W. (2d) 518, the court states:

"Defendants contend that compensation in this case should be based upon the loss of vision when corrected, as far as possible, with the use of corrective lenses or eye glasses, . . . . Defendants' contention is mainly based upon the following, quoting from their brief: 'The whole principle of the Missouri Workmen's Compensation Act is the provision of compensation to an injured employee for a disability which he has suffered which will effect his wage earning capacity, and the purpose of the act is also to attempt to compensate such employee to the extent of the proportionate loss of wage earning capacity. Liability of the employer and insurer is limited to the loss of earnings and wage earning capacity without regard to any damages at common law.' An examination of the cases cited by defendant shows that they are all founded upon compensation laws different from ours. That is to say, they are based upon laws providing for compensation for disability, or impairment of ability, to work, or for loss of earning power and not upon the theory of indemnity for the loss of a member or physical impairment as such.

"If our law is to be given the construction contended for by defendants, then the cases cited by them might be in point. But defendants misconstrue the theory of our law (Rev. St. 1929, sec. 3299 et seq.), which is based upon disability due to the loss of a member or a part of a member or function and not upon diminution of earning power by reason of the loss of function."

Thus we have analyzed each of the cases cited by this court in support of the proposition that the use of corrective glasses should not be taken into consideration in minimizing the disability. Each of the cases were decided upon statute law where specific indemnity was provided without regard to disability for work, with the exception of the California case.

The following cases, holding that the use of glasses is to be taken into consideration in determining the amount of disability, are based upon laws providing for compensation for disability or impairment of ability to work or loss of earning power, and not upon the theory of indemnity for the loss of a member or physical impairment as such. (*Frings v. Pierce-Arrow Motorcar Co.*, 182 App. Div. 445, 169 N. Y. Supp. 309; *Valentine v. Sherwood Metal Working Co.*, 189 App. Div. 410, 178 N. Y. Supp. 494; *McNamara v. McHarg, Barton Co.*, 200 App. Div. 188, 192 N. Y. Supp. 743; *Cline v. Studebaker Corp.*, 189 Mich. 514, 155 N. W. 519, L. R. A. 1916C, 1139; *Travelers' Ins. Co. v. Richmond*, (Tex. Com. App.) 291 S. W. 1085; *Moray v. Industrial Com.*, 58 Utah, 404, 199 Pac. 1023; *Massett v. Armerford Coal Min. Co.*, 82 Pa. Super. Ct. 579.)

In *Travelers' Ins. Co. v. Richmond, supra,* the Texas court states:

"The statement that 'it is undisputed that the injury resulted in a loss of 99 per cent. of the vision,' made by the Court of Civil Appeals, must be taken as relating to the degree of vision without the aid of glasses, for it is based upon Dr. Miller's estimate of 'disability of the left eye without glasses'; 'with glasses' he said, there remained in the eye '91 per cent. vision.' Richmond's testimony, in its general estimates, is susceptible of an interpretation which would increase the degree of impairment as given by Dr. Miller or by Dr. Richardson; but it admits existence of some vision 'without glasses' and an undefined though appreciably increased degree of vision 'with glasses.'

"We have, then, a situation wherein in any event 'sight' is not totally lost, in the absolute sense, for 'total' generally comprehends 'all' of the thing, etc., with respect to

which the adjective is used. . . . . A situation, too, where science affords means of use of a substantial portion of what otherwise is thought to be lost. Vision is considered to be a sense for the use of which the eye is a designed agency, and it is to be assumed that the faculty itself remains even though an essential agency be completely destroyed. If the agency be but impaired, the faculty is but thwarted *pro tanto*. For such a case as that before us science has devised appliances which, in substantial part at least, supply the destroyed parts of the agency which nature designed. Through those artificial means, or through those means employed in aid of nature, the sense functions. A solecism exists in a declaration that that which may be recovered is lost, and there is manifest contradiction of terms in saying that a sense, or emotion, which is merely suspended in whole or part for a time and which becomes active again is permanently lost.

"In our view, the record exhibits undoubted proof that 'the sight of one eye' is not 'totally and permanently lost.' Hence, the injury sued upon and proved is not compensable according to that term of section 12, article 8306, R. S. 1925, regarded as controlling by the district court and the Court of Civil Appeals, if the words of that provision are to be given their usual sense. Since the rule just mentioned is specifically fixed for a specific result of a particular kind of injury and since there is in section 12 a more general rule in terms appropriately embracive of the established facts, we do not perceive just reason for requiring the latter one to yield to the former."

In *Cline v. Studebaker Corp., supra,* where the claimant, with the use of proper glasses had 50 per cent of sight in his one eye, and without glasses had only 10 per cent, the court in considering the question stated:

"Under these circumstances it seems impossible to say that the injury has resulted in the loss of the eye. The use of glasses is a very ordinary occurrence, both by the young and the old. It is unnecessary to determine whether the loss of 90 per cent. of the sight is substantially the loss of the eye, because that is not the present case. Ninety

per cent. of the sight is not lost when it can be diminished to 50 per cent. by the use of common appliances. And it is the duty of the sufferer to minimize the injury as much as he reasonably may.''

Under our Workmen's Compensation Act compensation is provided on account of disability for work, except the specific indemnities for certain injuries set forth in sec. 43–1113, I. C. A. In *Flynn v. Carson*, 42 Ida. 141, 243 Pac. 818, this court said:

''Compensation is based upon the *loss of earning power, or capacity to earn*. The object of this legislation, broadly stated, is to compensate for *loss of capacity to earn,* measured by what a workman of that class and grade could earn in the employment in which he was, under the conditions prevailing therein before and up to the time of the accident.'' (Italics ours.)

In *McNeil v. Panhandle Lumber Co., supra,* this language was used:

''The record shows that at the time of his service to the lumber company *he was able to render and did render the service of an able-bodied man, . . . .* The lumber company accepted his services in the condition in which he was and paid him wages presumably based upon *his ability at that time.''* (Italics ours.)

But even if this court had not construed the basis on which our Workmen's Compensation Law is promulgated, the language of the act is indeed plain. Section 43–1110, I. C. A., providing compensation for total disability reads in part as follows: ''Where the injury causes total disability *for work, . . . .* '' the employer during such disability shall make certain payments in a certain manner. Section 43–1111, I. C. A., sets forth a rule of evidence, providing: ''In the case of the following injuries *in the absence of conclusive proof to the contrary* the disability caused thereby shall be deemed total and permanent, to wit: 1. The total and permanent loss of sight in both eyes. 2. The loss of both feet at or above the ankle. . . . . '' (Italics ours.) It is to be noted that the term ''disability caused thereby'' unmistakably has reference to the ''total disability for work,''

above quoted in sec. 43–1110. It is to be noted, also, that under the last-quoted section the particular injuries named, such as the permanent and total loss of sight in both eyes, may not always be deemed total and permanent, it is such in the absence of conclusive proof to the contrary. The compensation law also provides for specific indemnities for certain injuries, as set forth in sec. 43–1113, when disability for work by reason of the loss of the various members of the body enumerated is not to be taken in consideration. (*Panico v. Sperry Engineering Co.*, 113 Conn. 707, 156 Atl. 802.) But the general theory and spirit of the act, except for the specific indemnities set forth in sec. 43–1113, is to the effect that compensation is provided to make good the loss of the earning power or capacity to work on account of the injury. In other words, our compensation act is to the same effect as the laws of those states holding, as indicated in the above-cited cases, that compensation is to be paid on account of disability or impairment of ability to work, or for loss of earning power, and not as indemnity for the loss of a member or physical impairment as such, except the indemnities specified in sec. 43–1113; that then the use of corrective glasses may and should be taken into consideration in determining the extent of the disability. We believe that the decisions above cited are controlling and state the correct rule to be followed in this state by reason of the nature of our compensation act, and we so hold. Justly, industry should bear the burden of the loss of earning power or disability to work due to injury sustained by the employee, but if the employee by means of a simple scientific device such as glasses is able to see just as well as he ever did, is capable of performing the same kind or class of work, and does actually carry on in the field of labor without, in any sense, being disabled for work, it does not appeal to a sense of justice to say that he has a total and permanent loss of sight in both eyes or is blind and that he should require from the industry compensation for total permanent disability for the remainder of his life. That does not mean, and we do not hold, that corrective glasses, in the event of the loss of an

eye, or other artificial means, shall or may be permitted to be taken into consideration in fixing the specific indemnities set forth in sec. 43–1113, for in determining those specific indemnities the loss of earning power or capacity to work is not to be considered. Consequently, the cases cited in *McDonald v. Treasurer of State of Idaho, supra,* above analyzed, are correct and specifically applicable.

Applying the law announced herein to the instant case, respondent was entitled to compensation for total disability for work, which continued for more than 150 weeks, but when his disability changed from total disability to that of partial disability he was not entitled to any further compensation on account of partial disability for work, for the reason that he had already been paid compensation for more than 150 weeks. (Secs. 43–1110 and 43–1112, I. C. A.) In addition, he was also entitled to specific indemnity, as provided in sec. 43–1113, I. C. A., to the extent of the permanent injury to his left eye and the use of glasses would not be taken in consideration in fixing such specific indemnity.

The rule of law stated in *McDonald v. Treasurer of State of Idaho, supra,* that the use of glasses should not be taken into consideration in determining the disability for work, was superfluous and is not controlling. Said statement is contrary to what we hold the law to be, as herein announced.

Respondent takes the position that if the court holds that the rule just announced is the correct one to apply in this case, and if the court further holds that respondent had a change in condition for the better, that appellants must pay him compensation accrued to date of this decision, as the employer and surety have no authority to suspend payments pursuant to an award without order of the Industrial Accident Board. This position of respondent is untenable. The agreement itself, entered into by the parties, approved by the board, under which compensation was being paid, provided that payments were to be made thereunder "unless disability ceases." The agreement clearly shows that it was the intention of the parties that when disability in fact actually ceased, then no further

payments were required. That provision is in harmony with sec. 43–1112, I. C. A., which, among other things, provides: "In no case shall the weekly payments continue after the disability ends, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of 150 weeks." That means that when disability as a matter of fact ceases, payments shall cease. Section 43–1110, I. C. A., also specifically provides that the employer, which of course includes the surety, shall pay compensation in the event of total disability during such disability, thus negativing the idea that compensation shall be paid after disability as a fact actually ceases. There is no statutory provision under the Workmen's Compensation Law requiring the employer or surety to bring an action or proceeding to establish non-disability. True, if the parties are not agreed that disability has in fact ceased, then it becomes a matter of fact to be determined by the Industrial Accident Board and the board may then, upon hearing, definitely determine when, if at all, disability actually ceased and the injured employee is entitled to compensation to the date when disability actually ceased. In this case the board found that ever since and prior to June 26, 1928, the respondent was able to and did perform the ordinary work of a laboring man, receiving the usual wages for such work, consequently his disability ceased prior to the twenty-sixth day of June, 1928. Having theretofore been paid compensation covering a period of more than 150 weeks, amounting to $4,580, under sec. 43–1112, I. C. A., he is not entitled to any further compensation on account of partial disability.

In view of the conclusions reached, it is ordered that the district court enter judgment directing the Industrial Accident Board to make findings, conclusions and award in conformity with the law herein announced.

No costs allowed.

Budge, C. J., and Givens and Holden, JJ., concur.

Morgan, J., disqualified.