885 P.2d 372

**Reece BURKE, Claimant–Appellant,**

v.

**EG & G/MORRISON–KNUDSEN CON-STRUCTION COMPANY, Employer, and Employers Insurance of Wausau, Surety, Defendants–Respondents.**

No. 20303.

Supreme Court of Idaho,
Twin Falls, March 1994 Term.

June 6, 1994.

Radin & Webb, Idaho Falls, for appellant. Russell E. Webb, argued.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for respondents. Paul B. Rippel, argued.

JOHNSON, Justice.

This is a workers' compensation case. The primary issue presented is whether the Industrial Commission correctly determined the degree of permanent disability due to the loss of vision in the claimant's eye when the injury required the removal of the natural lens and when the claimant chose to accept the implantation of an artificial lens in its place. We conclude that the Commission applied the correct legal standard in determining the degree of permanent disability and in determining not to retain jurisdiction concerning the degree of permanent disability.

We also conclude that there is substantial and competent evidence to support the Commission's decision not to increase the claim-

ant's permanent disability beyond the degree of permanent physical impairment, and not to retain jurisdiction concerning the award of permanent disability.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Reece Burke, an electrician, was hit in the left eye by a metal fragment during the course of his employment with Morrison–Knudsen Construction Company (MK). The fragment caused a cataract in Burke's eye, requiring the surgical removal of Burke's natural lens. Burke's ophthalmologist told Burke he would be left with very poor vision unless he were to wear a contact lens or have an artificial lens implanted in his eye. Burke chose to accept the implantation of the artificial lens (the intraocular lens), instead of wearing a contact lens.

Following the implantation of the intraocular lens, Burke's ophthalmologist concluded that Burke had a fifty percent loss of central visual efficiency, corresponding to a total loss of fifty percent visual efficiency in the left eye. MK's surety compensated Burke for permanent partial impairment of fifty per-

cent of the left eye as well as Burke's medical expenses related to the injury.

Four years after the implantation of the intraocular lens, Burke requested that the Commission award him one hundred percent permanent disability of his left eye, or, in the alternative, to retain jurisdiction over his case until the long-term effect of his intraocular lens implant became known. The Commission declined to award Burke any increased permanent disability over and above the degree of permanent physical impairment or to retain jurisdiction. Burke appealed.

## II.

### THE COMMISSION APPLIED THE CORRECT LEGAL STANDARD IN DETERMINING THE DEGREE OF PERMANENT DISABILITY.

■ Burke asserts that the Commission did not apply the correct legal standard in determining the degree of permanent disability resulting from the loss of the natural lens in his left eye. We disagree.

I.C. § 72–428 contains the following provisions:

An employee who suffers a permanent disability less than total and permanent shall, in addition to the income benefits payable during the period of recovery, be paid income benefits for such permanent disability in an amount equal to fifty-five percent (55%) of the average weekly state wage stated against the following scheduled permanent impairments respectively:

. . . .

(3) Loss of Vision and Hearing
Total loss of vision of one eye . . . . . . . . . . . . . 150 [weeks]

(4) Total loss of use. Income benefits payable for permanent disability attributable to permanent total loss of use of [or] comparable total loss of use of a member shall not be less than as for the loss of the member.

(5) Partial loss or partial loss of use. Income benefits payable for permanent partial disability attributable to permanent partial loss or loss of use, of a member shall be not less than for a period as the permanent impairment attributable to the partial loss or loss of use of the member bears to total loss of the member.

---

In *Kelley v. Prouty,* 54 Idaho 225, 30 P.2d 769 (1934), the Court considered the implications of a statute similar to I.C. § 72–428.

This statute was I.C. § 43–1113 (1932), which contained the following provisions:

In case of the following injuries the compensation shall be fifty-five per cent of the average weekly wages, but not more than the weekly compensation provided in section 43–1110, in

addition to all other compensation, for ninety-nine per cent of the period stated against such injuries respectively, to wit:

For the loss of:                                    For the following number of weeks:

. . . .

Total blindness of one eye ............................................... 120

---

In *Kelley*, the Court considered whether correction of vision by artificial means should be taken into account in determining the compensation for loss of an eye:

> [T]he general theory and spirit of the act, except for the specific indemnities set forth in sec. 43–1113, is to the effect that compensation is provided to make good the loss of the earning power or capacity to work on account of the injury. In other words, our compensation act is to the same effect as the laws of those states holding ... that compensation is to be paid on account of disability or impairment of ability to work, or for loss of earning power, and not as indemnity for the loss of a member or physical impairment as such, except the indemnities specified in sec. 43–1113; that then the use of corrective glasses may and should be taken into consideration in determining the extent of the disability. .... That does not mean, and we do not hold, that corrective glasses, in the event of the loss of an eye, or other artificial means, shall or may be permitted to be taken into consideration in fixing the specific indemnities set forth in sec. 43–1113, for in determining those specific indemnities the loss of earning power or capacity to work is not to be considered.

54 Idaho at 245–46, 30 P.2d at 777.

In the present case, the Commission's determination of the degree of permanent impairment to Burke's left eye was based on opinions of both Burke's ophthalmologist and of an ophthalmologist who reviewed Burke's records for MK's surety, and on the Guides to the Evaluation of Permanent Impairment of the American Medical Association (the AMA guides).

Burke's ophthalmologist stated that although the intraocular lens and the use of glasses corrected Burke's vision to 20/20, the loss of the lens in Burke's left eye "correlates to 50% loss of central visual efficiency which corresponds to a total loss of 50% visual efficiency." The ophthalmologist who reviewed Burke's records for MK's surety stated that although Burke's vision is correctable to 20/20, the loss of the lens "is considered to be· an additional visual impairment, in [the AMA guides]," and that "there would be a loss of 50% in central vision." The AMA guides provide that the loss of a lens "is considered to be an additional visual impairment and if it is present, it is weighted by an additional 50% decrease in the value for remaining corrected central vision." American Medical Association, *Guides to the Evaluation of Permanent Impairment* 155 (3d ed. 1988). The accompanying table in the AMA guides indicates that when vision is corrected to 20/20, the loss of central vision because of the loss of a lens is fifty percent. *Id.*

In its decision, the Commission noted that the AMA guides provide that the loss of the natural lens "is allowed an impairment value without regard to an individual's actual corrected vision." The Commission accepted the evaluation of the two ophthalmologists of the permanent physical impairment to Burke's left eye. Burke contends that *Kelley* precludes the Commission from considering Burke's corrected vision in determining whether there was total loss of vision of his left eye pursuant to I.C. § 72–428.

We conclude that the Commission's determination of the degree of loss of vision to Burke's left eye because of the loss of the natural lens is not contrary to the direction given by the Court in *Kelley*. In *Kelley*, the Court said in determining the specific indemnity for loss of vision provided for in I.C. § 43–1113, which is now I.C. § 72–428, corrective glasses and "other artificial means"

should not be considered. *Id.* at 245–46, 30 P.2d at 777. This direction was given to make sure that vision as corrected would not determine the degree of a claimant's loss of vision for purposes of specific indemnity.

In this case, the Commission accepted the ophthalmologists' determination that the effect of the loss of the natural lens was measured by reducing the corrected vision by fifty percent. If the Commission had found that Burke had no loss of vision due to the correction to 20/20, the Commission would have violated the direction in *Kelley.* The Commission's reliance on the expert evidence calculating the loss of vision due to the absence of the natural lens did not violate *Kelley.*

### III.

**THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE FINDING THAT NONMEDICAL FACTORS DO NOT INCREASE THE DEGREE OF PERMANENT DISABILITY TO MORE THAN THE DEGREE OF PERMANENT PHYSICAL IMPAIRMENT.**

██ Burke asserts that there is not substantial and competent evidence to support the Commission's finding that nonmedical factors do not increase his permanent disability to more than his permanent physical impairment. We disagree.

Burke contends that the following are nonmedical factors that should have been considered by the Commission in determining that the degree of his permanent disability exceeded the degree of his permanent physical impairment: (1) the intraocular lens model implanted in his eye is no longer widely used; (2) the long-term medical effects of the intraocular lens are unknown; (3) there are medical risks and potential complications which arise from intraocular lens implantation; (4) Burke experiences glare caused by the intraocular lens; (5) Burke experiences headaches, eye fatigue, and more problems with debris in his eye than before the intraocular lens implantation; and (6) Burke must wear bifocals to focus on close objects because his left eye will only focus at a distance.

While I.C. § 72–430 directs that the Commission consider nonmedical factors in determining the degree of permanent disability, these factors cited by Burke are medical in nature and relate to the degree of permanent impairment.

The Commission evaluated the effect of nonmedical factors, including Burke's educational background, his vocational training, his employment after the injury to his left eye, and the status of the economy and the construction industry in the locale of Burke's residence. These were appropriate nonmedical factors for the Commission to consider. The Commission found that nonmedical factors do not increase Burke's permanent partial disability and that Burke's permanent partial disability does not exceed his permanent physical impairment rating. There is substantial and competent evidence to support this finding.

### IV.

**THE COMMISSION APPLIED THE CORRECT LEGAL STANDARD IN DECLINING TO RETAIN JURISDICTION.**

██ Burke asserts that the Commission applied an incorrect legal standard in declining to retain jurisdiction concerning his permanent disability. We disagree.

The Commission stated the standard it applied in ruling on Burke's request that the Commission retain jurisdiction:

> In a situation where the claimant's impairment is progressive and, therefore, cannot adequately be determined for purposes of establishing a permanent disability rating, it is entirely appropriate for the Industrial Commission to retain jurisdiction until such time as the claimant's condition is nonprogressive. *Reynolds v. Browning Ferris Industries,* 113 Idaho 965, 969, 751 P.2d 113, 117 (1988).

The Commission correctly applied the legal standard stated by the Court in *Reynolds*.

## V.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE FINDING THAT IT IS NOT LIKELY OR PROBABLE THAT BURKE WILL SUFFER FROM PROGRESSIVE IMPAIRMENT OR SERIOUS COMPLICATIONS BECAUSE OF HIS CONDITION.

█ Burke asserts that there is not substantial and competent evidence to support the Commission's finding that Burke will not likely or probably suffer from progressive impairment or from serious complications because of his condition. We disagree.

The Commission assessed the evidence submitted on the question of the possible complications Burke might experience as a result of the intraocular lens. The Commission found that the complications are speculative and highly unlikely. There is substantial and competent evidence to support this finding.

## VI.

### CONCLUSION.

We affirm the Commission's decision. We award costs on appeal to MK.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.