KARL SOLYMOSI, PETITIONER-RESPONDENT, v. HOUGH FUEL COMPANY, RESPONDENT-APPELLANT, v. SECOND INJURY FUND, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 4, 1978—Decided May 18, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. John F. Neary* argued the cause for appellant (*Messrs. McElroy, Connell, Foley & Geiser,* attorneys).

*Mr. Robert J. Haws,* Deputy Attorney General, argued the cause for respondent Second Injury Fund (*Mr. John J. Degnan,* Attorney General of New Jersey; *Mr. William F. Hyland,* former Attorney General of New Jersey, attorney; *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

*Mr. Raymond Dietrich* argued the cause for respondent Karl Solymosi (*Messrs. Dietrich & Lake, P.A.,* attorneys).

The opinion of the court was delivered by

KING, J. A. D. This appeal from the Division of Workers' Compensation involves the construction of *N. J. S. A.* 34:15–12(c)(20) which states:

The loss of * * * both eyes * * * as the result of any one accident, shall constitute total and permanent disability * * *.

On April 15, 1974 petitioner was seriously injured in an industrial accident when a boiler exploded. He suffered hearing damage and orthopedic, neurological and psychiatric injury, in addition to his visual difficulties.

About two months before the accident petitioner's eyes were examined. He had uncorrected bilateral vision of 20/400, corrected to 20/20 in each eye with glasses. His extraocular movements were full and intact, he had no double vision and no other pathology, aside from his classification as "industrially blind."

At the time of trial in 1976 respondent agreed that petitioner had suffered a total disability of the right eye, and voluntarily paid benefits representing a 100% loss of that organ. Respondent also paid permanent partial disability benefits of 10%. Concededly, petitioner suffered no injury to his left eye. The issue at trial was the extent of permanent total disability and the application of *N. J. S. A.* 34:15–12 (c)(20) to this particular claim.

The judge of compensation commenced his decision with the statement that petitioner "from a technical standpoint was one hundred percent totally and permanently disabled as the result of the loss of both eyes pursuant to *N. J. S. A.* 34:15–12(c)(20)" *before* the accident because of his totally correctable 20/400 vision bilaterally. The judge then rejected petitioner's theory of total and permanent disability from all causes.

The judge concluded, however, that the combination of the statutory loss of the right eye in the compensable accident, coupled with the pre-existing, though totally correctable, industrial blindness of the left eye, mandated a finding of total and permanent disability under *N. J. S. A.* 34:15–12(c)(20). He said:

The loss of two eyes renders one totally and permanently disabled. In the instant matter, the petitioner has suffered the loss of two eyes, one from the industrial accident under consideration and the other from unrelated pre-existing causes. I must, therefore, conclude that the petitioner is totally and permanently disabled within the meaning and purview of our statute. I must further conclude that this total and permanent disability consists of the combination of the effects of his compensable accident superimposed upon the prior non-compensable, non-deteriorating, non-aggravated total statutory loss of vision in the left eye.

Additionally, the judge found total permanent disability from all causes to be 75%, the loss of vision accounting for 50% of this figure.

Some additional factual background is helpful in appreciating the problem presented. Petitioner said that he al-

ways needed glasses before the accident. Without them he could not see. With glasses he satisfactorily worked as a boiler repairman. Following the accident his doctor reports his right eye is now only correctable to 20/50. He has some scarring in the pigment area and dilated blood vessels. The conjunctiva is congested and roughened. Double vision is present in all visual field, and the right eye suffered from muscular imbalance and paralysis. Petitioner complains he has no mobility in the right eye, cannot focus, and has depth perception problems.

Petitioner returned to his employment about ten months post-accident. He no longer repairs boilers but now works as a dispatcher. He works full-time, and some overtime, but his efforts are limited to answering the phone and filing. He commutes to work in his car. It may be fairly inferred that his present employment stems from his employer's benevolence.

We must decide whether the pre-existing industrial blindness of the uninjured left eye entitled petitioner to total and permanent disability under *N. J. S. A.* 34:15–12(c)(20). This section ascribes total and permanent disability in instances of catastrophic losses of "both hands, or both arms, or both feet, or both legs, or both eyes, or any 2 thereof as the result of any one accident."

The statute speaks of the dual loss of limbs or eyes in "any one accident." Here there was no loss of vision, corrected or uncorrected, or injury, to petitioner's left eye. Therefore, the loss of two eyes in the same accident did not occur; the statutory requirement was not met. *Cf. Combination Rubber Mfg. Co. v. Obser,* 95 *N. J. L.* 43 (Sup. Ct. 1920), aff'd 96 *N. J. L.* 544 (E. & A. 1921), where the court awarded total and permanent disability for the loss of a one-eyed employee's remaining eye without reliance upon the analogous statutory section in effect at the time relating to dual loss of limb or eyes.

We do not think subsection 20 was intended to require total disability payments to a petitioner who has bilateral in-

dustrial blindness before the accident but has 20/20 post-accident corrected vision in one eye. This subsection was obviously intended to deal with catastrophic injuries — the dual loss of limbs, eyes, or combinations thereof.[1] We hold in this situation that an industrially blind worker with vision correctable to 20/20 is not automatically entitled to total and permanent disability payments under *N. J. S. A.* 34:15–12 (c),(20) where he suffers the statutory loss of one eye.

Apparently the trial judge felt he was required to disregard petitioner's corrected vision in the left eye to 20/20 because of *Johnannsen v. Union Iron Works,* 97 *N. J. L.* 569 (E. & A. 1922), which held that an injured employee was entitled to an award based on uncorrected vision regardless of his totally correctable post-accident vision. See also, *Fiadine v. Florence Pipe and Foundry Co.,* 4 *N. J. Misc.* 750 (Dept. of Labor 1926). These cases dealt with partial disability to workers whose vision was correctable to 20/20 after the accident, but who did not wear glasses before the accident. We perceive *Johnannsen* and *Fiadine* to be factually and logically different from the one which we confront in the present case. The workers in those cases suffered a measurable loss, despite post accident correctability. If post-accident correctability was the sole standard, those legitimately injured workers would have received no compensation for their permanent disability. Additionally, these workers were required to wear glasses after their injury.

---

[1]We need not resolve the question of whether "loss of both eyes" under *N. J. S. A.* 34:15–12(c) (20) requires enucleation or whether loss of vision alone is sufficient, since we find this subsection inapplicable to the present facts. In *N. J. S. A.* 34:15–12(c) (16) the Legislature has set the award at 200 weeks compensation for "loss of vision of an eye" while *N. J. S. A.* 34:15–12(c) (17) sets the award for loss of vision and enucleation at 225 weeks. This statutory distinction arose from the potential duplication of benefits where a visionless eye was totally enucleated. See *McCadden v. West End. B. & L. Assn,* 126 *N. J. L.* 1 (Sup. Ct. 1940), aff'd 127 *N. J. L.* 245 (E. & A. 1941).

In the present case, where the worker wore glasses before the accident, we deem it proper to consider his pre-accident corrected vision in determining compensation in the context of total and permanent disability. The leading text has stated:

> If the claimant had some degree of prior impairment of vision, the matter may become a little more complicated. The courts appear to agree that the beginning-point should be the claimant's vision *as corrected* before the accident. Logic and symmetry might then go on to dictate that comparison should be made with the claimant's vision *as corrected* after the accident, and some courts have indeed so held. [2 *Larson, Workmen's Compensation,* § 58.13 at 10–186]

The Supreme Court of Idaho noted in *Cox v. Intermountain Lumber Co.,* 92 *Idaho* 197, 439 *P.* 2d 931, 935 (1968), that

> \* \* \* the problem of partial loss of vision, correctable by the use of glasses, and how it should be evaluated in workmen's compensation cases where an industrial injury causes loss of eyesight, has vexed the courts for many years. [Citations omitted]. The diverse and conflicting opinions arise because the courts have attempted to fashion one rule to govern every case. [439 *P.* 2d at 935]

There are many different types of situations which can arise, as the cases indicate, when we are concerned with the disability of dual organs, problems of injury combined with congenital and developmental disorders, the concepts of total or partial permanent disability, the variety of occupations and the many different state statutes. See *e. g., Piper v. Kansas Turnpike Auth.,* 200 *Kan.* 438, 436 *P.* 2d 396 (Sup. Ct. 1968); *Standard Testing and Eng'g. Co. v. Bradshaw, Okl.,* 442 *P.* 2d 337 (Sup. Ct. 1968); *Wasson v. Northeast Motor Co., Me.,* 253 *A.* 2d 249 (Sup. Jud. Ct. 1969); *Lambert v. Industrial Comm.,* 411 *Ill.* 593, 104 *N. E.* 2d 783 (Sup. Ct. 1952); *Kelley v. Prouty,* 54 *Idaho* 225, 30 *P.* 2d 769 (Sup. Ct. 1934).

For the purposes of the present analysis we agree with the statement of the Supreme Court of Kansas in *Piper v. Kansas Turnpike Auth., supra*:

> Our Workmen's Compensation Act should be interpreted and applied in a practical and common-sense manner to accomplish its ultimate purpose. The theory behind the Act is that industry rather than society should care for its wrecked man-power. The use of glasses as an aid to vision is commonly understood and employed. It is common knowledge that without glasses many persons whose vision is practically normal with glasses would be unable to carry on their work without them. This is true of many people in all trades and professions. Such persons are not totally disabled by any means. [200 *Kan.* at 444]

In the present case petitioner was severely disabled visually without eye glasses before the accident. However, with the assistance of eye glasses he was industrially competent, and held a demanding job. As a result of the accident all agree he suffered the statutory loss of one eye. All agree, as well, that his other eye was unimpaired and remains at a correctable 20/20.

In view of our disposition as to the inapplicability of *N. J. S. A.* 34:15-12(c)(20) we do not reach any conclusion as to (1) appellant's contention that the judge of compensation erred in finding that a 100% loss of petitioner's right eye constituted 50% of total and permanent disability, (2) the responsibility of the Second Injury Fund and (3) the correctness of the judge's ruling that petitioner was not totally and permanently disabled from all causes.

Reversed and remanded for findings by the judge of compensation on the issue of disability consistent with our holding that *N. J. S. A.* 34:15-12(c)(20) does not apply to this situation. Further testimony on the issue of disability may be taken if the judge so desires. We do not retain jurisdiction.