(No. 5912. December 5, 1932.)

J. A. McDONALD, Appellant, v. TREASURER OF THE STATE OF IDAHO and THE INDUSTRIAL SPECIAL INDEMNITY FUND OF THE STATE OF IDAHO, Respondents.

[16 Pac. (2d) 988.]

536

Harry M. Morey and R. M. Cummins, for Appellant.

Fred J. Babcock, Attorney General, and Maurice H. Greene, Assistant Attorney General, for Respondents.

BUDGE, J.—In this proceeding appellant seeks to recover indemnity for total disability out of the Industrial Special Indemnity Fund provided by C. S., secs. 6234 (a) and 6234 (b) (chap. 106, 1927 Sess. Laws). In his petition filed with the Industrial Accident Board appellant alleges that on June 22, 1929, by accident arising out of and in the course of his employment by Clearwater Timber Company, he sustained injuries which necessitated and resulted in the enucleation of his left eye, for which injuries he was allowed and paid compensation, also:

"That prior to said injury by accident, said J. A. McDonald was industrially blind in the right eye. That on or about the time of said accident, he had a visual acuity of not to exceed twelve two-hundredths, which amounts to approximately a ten per cent (10%) vision, and that for all practical purposes, said J. A. McDonald has been unable and will be unable to perform work of any kind whatsoever; that said inability to work has existed ever since his injury by accident as above set forth, and is due to the fact that since the loss of his left eye he has a total and permanent loss of sight of both eyes, as far as ability to work is concerned, and that he had and has a condition in his right eye equivalent to his 'having lost one eye' as outlined in Section 6234 (b), Idaho Compiled Statutes."

Each allegation of the petition was denied by respondent for lack of knowledge or information. Upon such issues a hearing was had before the Industrial Accident Board, which found the accident of June 22, 1929, the injury to appellant's left eye, allowance of compensation and payment thereof to be as alleged in the petition, and

"IV. That in the year 1918, the claimant had a visual acuity or vision in his right eye, without glasses, of

20/300ths or 8.2%, and with glasses that he was then wearing he had a vision of 20/70ths in each eye; that on June 29, 1929, claimant had a visual acuity or vision in his right eye, with glasses, of 20/40ths or 83.6%; that on July 29, 1929, claimant had a visual acuity or vision in his right eye, without glasses, of approximately 12/200ths or 7.4%, and with glasses that he was then wearing he had a vision of 20/40ths in his right eye; that on October 11, 1930, claimant had a visual acuity or vision in his right eye, without glasses, of 10/200ths or 6%; that in the month of July, 1931, claimant had a visual acuity or vision in his right eye, without glasses, of approximately 5/200ths or 3%; that in the year 1918 claimant had defective vision in both eyes and that the vision in both eyes gradually grew less until the time of his said injury by accident on June 22, 1929; that at the time of said injury on June 22, 1929, the vision in both of claimant's eyes was defective in about the same degree.

"V. That at the time of said accident and injury on June 22, 1929, claimant had not lost his right eye."

The board, upon such findings of fact, made its ruling of law that appellant was not entitled to an award out of said Industrial Special Indemnity Fund and made its order denying and dismissing the petition.

An appeal was taken by appellant to the district court, which reviewed the proceedings before and the decision of the Industrial Accident Board and made findings of fact practically identical with those of said board; concluded therefrom as a matter of law that on June 22, 1929, appellant "had not 'lost his right eye' and is not entitled to an award of indemnity out of the Special Indemnity Fund"; and entered judgment affirming the order of the board, from which judgment this appeal is taken.

Appellant specifies ten assignments of error which involve the construction of C. S., secs. 6234 (a) and 6234 (b) (1927 Sess. Laws, chap. 106). C. S., sec. 6234 (a), provides for the creation of the Industrial Special Indemnity Fund and the manner of its disbursement. C. S., sec. 6234 (b) provides *inter alia*, that:

"If an employee . . . . having lost one eye, received such injury which results in the total and permanent loss of the sight of the other eye, the employer shall only be liable for the permanent partial disability caused by the subsequent injury: Provided, however, that in addition to compensation for permanent partial disability and after the cessation of payments for the periods of weeks prescribed by Section 6234, the disabled employee shall be paid by the Industrial Accident Board, out of the funds in the Industrial Special Indemnity Fund, the remainder of the compensation that would be due the injured employee for permanent total disability if the subsequent injury itself had been the cause of his permanent total disability, such payments to be made by the Industrial Accident Board monthly by orders drawn on the State Treasurer to be charged against the Industrial Special Indemnity Fund. . . . . "

It seems to be established that prior to the accident on June 22, 1929, resulting in the loss of his left eye, appellant was following and able to follow his usual and ordinary occupation as a woodsman, without glasses, although at times he wore glasses. Shortly after the accident his visual acuity or vision in the right eye was not greater than 7.4 per cent without glasses and 20/40ths with glasses he was then wearing, and was unable thereafter to pursue his former occupation or other remunerative employment, and testified, among other things, that it was with great difficulty that he was able to find his way about or to feed himself.

In *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068, 1074, decided December 31, 1921, prior to the enactment of the section above quoted, the court quotes from *In re Branconnier, In re Travelers' Ins. Co.*, 223 Mass. 273, 111 N. E. 792, with reference to workmen's compensation laws, and an employee who had previously lost one eye and who met with an injury depriving him of the other, as follows:

"The employee, when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity.

It was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties. But, nevertheless, it was the employee's capacity. It enabled him to earn the wages which he received. He became an 'employee' under the act and thereby entitled to all the benefits conferred upon those coming within that description. The act affords a fixed compensation for a limited time 'while the incapacity for the work resulting from the injury is total.' It establishes no other standard. It fixes no method for dividing the effect of the injury and attributing a part of it to the employment and another part to some pre-existing condition, and it gives no indication that the legislature intended any such division. The total capacity of this employee was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of that of the normal man. But that capacity, which was all he had, had been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury."

In the McNeil case, *supra*, McNeil had but one sound eye. By reason of the accident that he sustained, he lost the sight of his sound eye, thereby becoming industrially blind and totally and permanently incapacitated by reason of the injury to the sound eye, and was awarded compensation for total permanent disability against the employer and its carrier. The immediate cause and direct liability of the employer was the injury to the one sound eye as a result of the accident. Where injuries sustained by a normal man in possession of all his faculties would ordinarily result in but a partial disability, the same injuries, when sustained by a man whose faculties have already been impaired, as in the McNeil and instant cases, may result in total permanent disability. C. S., secs. 6234 (a) and 6234 (b) *supra*, were enacted for the purpose of creating a fund to meet such a situation and to relieve the employer and its carrier in such cases from the payment of all but partial permanent disability compensation caused by the accident, and providing for the payment to the employee from the fund created, of

the difference between the amount paid by the employer and its carrier and the amount of total permanent disability compensation resulting from a combination of the accident and the employee's previous physical condition.

There are numerous decisions in various jurisdictions having statutes similar or somewhat similar to ours, which discuss in detail such statutory provisions and construe the same and which are collated in annotations relating to loss or impairment of eyesight in 8 A. L. R. 1324, 24 A. L. R. 1466 and 73 A. L. R. 706, as well as in the authorities cited by respective counsel, but we are of the opinion that in the light of the McNeil case, *supra*, and the rule announced therein and the provisions of our statutes referred to above, there is no necessity to discuss these cases, since there is but one conclusion that can be reached, namely: That the employer and its carrier are liable to the employee only for compensation for permanent partial disability caused by the accident, even though total permanent disability results therefrom due to the employee's previous physical impairment, and where total permanent disability results, the difference between compensation therefor and the amount paid by the employer and its carrier is payable to the employee out of the Industrial Special Indemnity Fund provided by C. S., sec. 6234 (a).

██ ██ On July 29, 1929, subsequently to the accident, appellant, without glasses, had a visual acuity or vision of 7.4 per cent. With the glasses he was then wearing he had at that time 20/40ths. Without glasses he was industrially blind, as a visual acuity or vision of 8 per cent or less constitutes industrial blindness. (*Burt v. Clay*, 207 Ky. 278, 269 S. W. 322; *Employers' Mut. Ins. Co. v. Industrial Commission*, 70 Colo. 228, 199 Pac. 482; *Industrial Commission v. Johnson*, 64 Colo. 462, 172 Pac. 422; *Stammers v. Banner Coal Co.*, 214 Mich. 215, 183 N. W. 21.) It is the contention of appellant that the use of glasses cannot be taken into consideration in determining whether appellant is industrially blind or in determining his compensation. There is a conflict of authority upon this question, as a result, in

some jurisdictions, of statutory provisions relating to the use of artificial appliances. We have no such statute, and are of the opinion that the weight of authority and the better rule, in the absence of statute, sustain appellant's contention. (*Allesandro Petrillo Co. v. Marioni*, (Del. Super.) 131 Atl. 164; *Juergens Bros. Co. v. Industrial Commission*, 290 Ill. 420, 125 N. E. 337; *Androlonis v. Philadelphia & Reading Coal & Iron Co.*, 280 Pa. 71, 124 Atl. 336; *Globe Cotton Oil Mills v. Industrial Acc. Com.*, 64 Cal. App. 307, 221 Pac. 658; *Marland Refining Co. v. Colbaugh*, 110 Okl. 238, 238 Pac. 831; *Butch v. Shaver*, 150 Minn. 94, 184 N. W. 572; *Johannsen v. Union Iron Works*, 97 N. J. L. 569, 117 Atl. 639; *Graf v. National Steel Products Co.*, 225 Mo. App. 702, 38 S. W. (2d) 518.)

Respondent contends that the evidence discloses a gradual loss of vision due to natural causes by reason of old age and that for many years prior to the accident he had used glasses, and that therefore he could not be awarded compensation for total permanent disability. The fact remains, nevertheless, that before the accident appellant had two eyes with which he could and did perform labor and for which he was remunerated. After the accident and the loss of one eye he could not perform any labor and was by reason of the accident made industrially blind. As in the McNeil case, *supra:*

"The lumber company accepted his services in the condition in which he was and paid him wages presumably based upon his ability at that time. The loss of his right eye certainly placed him in a condition of total disability, entitling him clearly to the award made by the board."

What appellant's condition may have been prior to the accident would be immaterial, since it was the accident that resulted in his total permanent disability and entitled him to an award upon that basis.

It follows that the judgment of the district court must be reversed, and it is so ordered, and the cause is remanded to the district court, with directions to remand the same to the Industrial Accident Board and to instruct the board to enter

up an award for total permanent disability in accordance with the views herein expressed. Costs awarded to appellant.

Lee, C. J., and Givens, Varian and Leeper, JJ., concur.