439 P.2d 931

John D. COX, Claimant-Respondent,

v.

INTERMOUNTAIN LUMBER COMPANY, and the Travelers Indemnity Company, Defendants-Appellants,

and

State of Idaho in relation to Industrial Special Indemnity Fund, Defendant-Respondent.

No. 10059.

Supreme Court of Idaho.

April 23, 1968.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants.

C. Walker Lyon, Salmon, for claimant-respondent.

Allan G. Shepard, Atty. Gen., Frank H. Powell, Special Atty. Gen., Coeur d'Alene, for respondent Special Indemnity Fund.

McFADDEN, Justice.

John D. Cox, claimant-respondent, hereinafter sometimes referred to as claimant or Cox, on October 18, 1965, was injured in an industrial accident, while in the employ

of appellant Intermountain Lumber Company, whose surety at the time of the accident was appellant Travelers Indemnity Company. Cox filed a petition for hearing before the Industrial Accident Board against his employer and its surety. He also named as a defendant the Industrial Special Indemnity Fund (hereinafter referred to as the indemnity fund). See I.C. §§ 72–314, 72–315. Cox was married at the time of the accident with two minor children dependent upon him.

It was stipulated, and the board so found, that Cox was blind (within the meaning of the Workmen's Compensation Act) in his right eye prior to the October 18, 1965 accident. It was further stipulated, and so found by the board, that prior to such accident, Cox had only 20% unaided visual acuity in his left eye, but that aided by glasses he had 85% visual acuity in that eye. The board found that the accident caused blindness in Cox's left eye and that the right eye already was "legally blind." The board concluded that "the result of the accident was to cause the claimant to become totally and permanently disabled under the provisions of Sec. 72–311, I.C., * * *."

The board ordered appellants, the employer and its surety, to pay claimant $45.00 per week for 120 weeks and after expiration of that time, claimant was to petition the board for an award against the Industrial Special Indemnity Fund for the remainder of the amount that would be due for total permanent disability.

The issues presented by this appeal do not involve the claimant Cox. It is undisputed that he is totally blind and is totally disabled, and thus entitled to receive $45.00 for 400 weeks and a reduced amount subsequent to that time. (I.C. § 72–310(a), as amended S.L.1963, Ch. 46, p. 196). However, the appellants and the indemnity fund disagree as to how much of the award each is to pay.

In addition to I.C. § 72–310(a), other statutes involved as they existed at the time of claimant's accident and injury are as follows:

"I.C. § 72–313. Specific indemnities for certain injuries.—(a) Specific Indemnity for Permanent Injury. An employee, who suffers a permanent injury less than total, shall, in addition to compensation, if any, for temporary total and temporary partial disability, be entitled to specific indemnity for such permanent injury equal to 60% of his average weekly wages, but not more than [$30.00] nor less than [$15.00] per week for the periods of time stated against the following scheduled injuries respectively:

Specific Indemnity Schedule
For loss of one:     For the following
                 number of weeks:
*    *    *    *    *    *
Total blindness of one eye . . . . 120
*    *    *    *    *    *

(b) Computation of Specific Indemnity for Nonscheduled Injuries. In all other cases of permanent injury, less that total, not included in the above schedule, the compensation shall bear such relation to the periods stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule or to total disability (400 weeks)."

"I.C. § 72–315(a). Compensation for total blindness caused by pre-existing conditions and subsequent accidental injury.—Whenever an employee already blind in one eye loses the sight in his other eye as the result of a compensable accident, his employer shall be liable only for the disability caused by the accident which occurred in his employ, but the injured employee shall be compensated for the remainder of his total permanent disability out of the industrial special indemnity fund, as provided in section 72–315(c)."

"I.C. § 72–315(c). Residual liability of industrial special indemnity fund.—In the case of an injured employee eligible to compensation from the industrial special indemnity fund, as provided in section

72–315(a) and 72–315(b), following the payment by the employer to the injured employee of all compensation for disability caused by the accident and after the cessation of the period of weeks prescribed by section 72–313 for the payment of specific indemnity, the disabled employee shall be paid out of (the) industrial special indemnity fund the remainder of the compensation that would be due him for total permanent disability, if the subsequent injury itself had been the cause of his total permanent disability."

Appellants contend: that they are liable only for $30.00 per week for 24 weeks; that they are liable only for medical expenses incurred during those 24 weeks; and that respondent is liable for the remaining amount. Appellants base their contention on the fact that Cox had only 20% unaided visual acuity in his left eye prior to the accident and hence they are liable only for 20% of the 120 weeks provided by I.C. § 72–313, or 24 weeks. With respect to the weekly payments to be made, appellants contend that $30.00 per week is all they are liable for, and not $45.00 per week as the board required them to pay under I.C. § 72–310. On the other hand the indemnity fund asserts that appellants are liable for the full 120 weeks and as it interprets I.C. § 72–315(a) and (c), appellants must pay at the rate of $45.00 per week for that period of time.

Appellants in their brief state that they "do not question that they should be liable to the claimant at the rate of $45.00 per week from October 23, 1965 (the date of commencement of claimant's disability) to approximately December 11, 1965, since until the latter date the condition of the claimant had not become stable from a medical standpoint." They argue, however, that upon the determination that the claimant was thereafter totally and permanently disabled, I.C. § 72–315(a) and I.C. § 72–315(c) come into effect, and that appellants' liability must be limited to the disability caused by the accident, with the remainder of claimant's total permanent disability being paid from the indemnity fund.

This court and the parties all agree as to the ultimate purpose of the indemnity fund. Prior to its creation, an employer who hired a handicapped worker was subject to the responsibility of paying for total permanent disability compensation to an employee rendered totally and permanently disabled because of his pre-existing handicap coupled with a subsequent industrial injury. See: McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068 (1921). The fund was established to relieve an employer of this burden. The underlying policy of the fund is to allow an employer to hire a handicapped person, with the obligation only to pay compensation for an industrial injury to the handicapped person such amount as the employer would have had to pay an employee who had not been handicapped, with the indemnity fund assuming responsibility for the balance of the total permanent disability. See: McDonald v. Treasurer of State of Idaho, 52 Idaho 535, 16 P.2d 988 (1932); Arview v. Industrial Comm., 415 Ill. 522, 114 N.E. 2d 698 (1953); Miears v. Industrial Acc. Bd., 149 Tex. 270, 232 S.W.2d 671 (1950).

With respect to the length of time appellants should make payments, it is our conclusion that the board was correct in its determination that appellants are liable for 120 weeks under the applicable provisions of I.C. § 72–313.

Appellants cite Kelley v. Prouty, 54 Idaho 225, 30 P.2d 769 (1934), for the proposition that the effect of use of glasses should not be considered in determining an award under I.C. § 72–313. In that case, this court held that the use of glasses *could* be taken into consideration in determining whether an employee was totally permanently disabled under the predecessor of I.C. § 72–311. Therein it is stated:

"That does not mean, and we do not hold, that corrective glasses, in the event of the loss of an eye, or other artificial means, shall or may be permitted to be taken into consideration in fixing the.

specific indemnities set forth in section 43-1113 (predecessor to I.C. § 72–313), for, in determining those specific indemnities, the loss of earning power or capacity to work is not to be considered." 54 Idaho 245, 246, 30 P.2d 777.

In Kelley v. Prouty, supra, the court was considering the case then before it, where an employee had lost a high degree of his vision, but the use of corrective glasses minimized the loss. There this court intimated that the use of corrective glasses would not be taken into consideration to lessen the amount of compensation payable for specific indemnity pursuant to the predecessor of I.C. § 72–313. In the Kelley case an agreement had been entered into which indicated that it was the intention of the parties that when the deemed total permanent disability in fact actually ceased, then no further payments were required. By the use of corrective glasses, Kelley's status changed from that of deemed total permanent disability to partial disability. Therein the court, in reversing the decision of the trial court affirming a total permanent disability award, directed the trial court to enter judgment directed to the board to accord Kelley a recovery as follows:

"Applying the law announced herein to the instant case, respondent was entitled to compensation for total disability for work, which continued for more than 150 weeks, but, when his disability changed from total disability to that of partial disability, he was not entitled to any further compensation on account of partial disability for work, for the reason that he had already been paid compensation for more than 150 weeks. Sections 43–1110 and 43–1112, I.C.A. In addition, he was also entitled to specific indemnity, as provided in sec. 43–1113, I.C.A., to the extent of the permanent injury to his left eye and the use of glasses would not be taken in consideration in fixing such specific indemnity.

"The rule of law stated in McDonald v. Treasurer of State of Idaho, [52 Idaho 535, 16 P.2d 988] supra, that the use of glasses should not be taken into consideration in determining the disability for work, was superfluous and is not controlling. Said statement is contrary to to what we hold the law to be, as herein announced." 54 Idaho 246, 30 P.2d 777.

■ In the instant case appellants assert that since only 20% of claimant's vision unaided by the use of glasses was lost, they should be required to compensate only for such percentage loss of vision. This contention is based upon the theory that I.C. § 72–315(a) relieves the employer of paying for pre-existing handicaps. While the purpose of that provision may be to relieve an employer of liability for prior handicaps in a determination of the employer's liability for an industrial injury which, coupled with the prior disability, causes total permanent disability, we do not glean any legislative intent requiring the application of such statutory provision in a situation where the handicap is partial loss of vision correctible with the use of glasses.

The problem of partial loss of vision, correctible by the use of glasses, and how it should be evaluated in workmen's compensation cases where an industrial injury causes loss of eyesight, has vexed the courts for many years. See the following annotations: 142 A.L.R. 822, at 832 (1943); 99 A.L.R. 1499 at 1507 (1935); 73 A.L.R. 706 at 716 (1931); 24 A.L.R. 1466 at 1469 (1923); 8 A.L.R. 1324 at 1330 (1920). The diverse and conflicting opinions arise because the courts have attempted to fashion one rule to govern every case. See: Lambert v. Industrial Comm., 411 Ill. 593, 104 N.E.2d 783 (1952); Piper v. Kansas Turnpike Authority, 200 Kan. 438, 436 P.2d 396 (1968).

■■ We do not agree with appellant's contention that claimant suffered only 20% loss of vision, insofar as their liability is concerned. It is undisputed that as a result of the injury Cox lost the total vision of his left eye whether aided by glasses or not. I.C. § 72–313 provides for the pay-

ment of specific indemnity for 120 weeks for "total blindness of one eye." See Leach v. Grangeville Highway Dist., 55 Idaho 307, 41 P.2d 618 (1935). In light of the underlying purpose for creation of the indemnity fund, we construe I.C. § 72–315(c) to mean that the employer shall pay the same amount he would have had to pay had the employee not been handicapped. The fact remains that Cox suffered complete loss of sight of the left eye, caused by the industrial injury, and the employer must bear the statutory compensation cost of that result.

■ Appellants contend that their liability to claimaint is limited to $30.00 per week after the condition of claimant's left eye became stabilized. With this contention the court agrees. Again, the employer should pay only what it would have had to pay had the employee not been handicapped. Had claimant enjoyed vision in his right eye, appellants' liability would have been limited to $30.00 per week for the 120 weeks (aside from liability for the medical expenses) as the specific indemnity for the "total blindness of one eye." I.C. § 72–313.

The award of the board fixed the appellant's liability at $45.00 per week for 120 weeks, which was computed pursuant to I.C. § 72–310, which provides compensation for total disability for work. I.C. § 72–315(c) provides that an employer shall pay "all compensation for disability caused by the accident," and continues "the disabled employee shall be paid out of (the) industrial special indemnity fund the remainder of the compensation that would be due him for total permanent disability, if the subsequent injury itself had been the cause of his total permanent disability." The disability caused by the industrial injury was the total blindness of one eye. The specific indemnity schedule requires payment therefor of 120 weeks compensation at $30.00 per week. I.C. § 72–313.

[7] The indemnity fund asserts that an amendment to I.C. § 72–315 in 1955 (S.L. 1955, Ch. 250, § 1, p. 556) substituted "disability" for "permanent partial disability"

and that thus the legislature intended the employer to pay the total permanent disability rate for the specific number of weeks as fixed by the specific indemnity schedule. We cannot agree with this contention. Such a construction would make the employer liable for an amount in excess of that which he would have been liable for had the employee not been so handicapped. Such a result would be contrary to the underlying purpose of creating the indemnity fund to protect employers in their employment of handicapped persons and to encourage employment of such persons.

■ I.C. § 72–315(a) specifically provides that the injured employee "shall be compensated for the *remainder* of his total permanent disability out of the industrial special indemnity fund, as provided in section 72–315(c)." This last referred-to provision provides that the disabled employee shall receive out of the special indemnity fund "the *remainder* of the compensation that would be due him for total permanent disability, if the subsequent injury itself had been the cause of his total permanent disability." These provisions simply mean that the employee shall be rated as totally permanently disabled, and that the indemnity fund shall pay for the balance after applying payments made by the employer.

■ It is recognized that claimant, under the provisions of the specific indemnity statute (I.C. § 72–313, as amended S.L.1959, Ch. 212, p. 466, in effect at the time of claimant's injury here), is entitled to receive only $30 per week, while under the provisions of the total disability statute (I.C. § 72–310(a), as amended S.L.1963, Ch. 46, p. 196, in effect at the time of claimant's injury), claimant, a married man with two minor children, would be entitled to $45.00 per week. As to the period encompassed by claimant's entitlement to specific indemnity, it is the obligation of the indemnity fund to pay "the remainder of the compensation due him for the permanent disability." Thus, the employer is responsible for the payment of the specific indemnity payments for the limit provided,

i. e., 120 weeks at $30.00 per week, and the indemnity fund is responsible for the difference between those payments and that provided by statute for total permanent disability, i. e., $45.00 per week.

Appellants also contend that they are liable for hospital and medical expenses only during the period of time that they are required to pay specific indemnity payments and not liable beyond that date. It is also contended that the board erred in failing to rule on the liability of the indemnity fund for future hospital, medical and kindred expenses which may be necessarily incurred by the claimant.

The board ordered "that said defendants [referring to the employer, its surety, and the indemnity fund], either or both of them, on claimants behalf are liable for all necessary medical, surgical and kindred expenses incurred by claimant for treatment of his injury of October 18, 1965, from the date of the accident to March 10, 1967, the date of the hearing herein." The board then approved payments made by appellant Travelers Indemnity Fund, and then stated:

"Should further medical, surgical and kindred expenses be necessarily incurred by claimant for additional treatment of his accidental injury and a controversy arise between the parties with respect thereto, the Board will upon appropriate procedure initiated by any party determine the rights or obligations of the respective parties."

We find no error in this order. I.C. § 72–307 imposes upon the employer the duty of providing to an injured employee reasonable medical, surgical and other attendance or treatment as may be required immediately after an injury and for a reasonable time thereafter. In a case such as presently before the court, how this obligation is to be fulfilled as between appellant surety and the indemnity fund is dependent upon the facts as they may later develop. Had Cox not been handicapped by the blindness in his right eye, appellant surety company's liability for medical services would continue as to claimant's left eye for a "reasonable time." In Clevenger v. Potlatch Forests, Inc., 85 Idaho 193, 377 P.2d 794 (1963), this court held that "reasonable time" as used in I.C. § 72–307 is not necessarily limited to the period of time for specific indemnity payments. Determination of what is a "reasonable time" is an issue for the board to resolve. There was no error in the board's refusal to hold in abeyance a determination of this issue until the need for such services has arisen.

The order of the board is affirmed except as to that part requiring that appellant surety company pay specific indemnity at the rate of $45 per week, and that part of the order is reversed with directions to enter an order in conformity with the views expressed herein.

No costs allowed.

SMITH, C. J., and TAYLOR, McQUADE and SPEAR, JJ., concur.