647 P.2d 746

**Carl I. ROYCE, Claimant-Respondent,**

**v.**

**SOUTHWEST PIPE OF IDAHO, Employer, and General Insurance Company of America, surety, Defendants-Appellants,**

**and**

**State of Idaho, Industrial Special Indemnity Fund, Defendant-Respondent.**

**No. 13535.**

Supreme Court of Idaho.

June 24, 1982.

Peter J. Boyd and Ryan P. Armbruster of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-appellants.

John J. Healzer of Hart, Burdick & Healzer, Jerome, for claimant-respondent.

Max M. Sheils, Jr., of Ellis, Brown, Sheils & Steele, Boise, for defendant-respondent.

McFADDEN, Justice.

On January 20, 1972, claimant Royce was employed by appellant Southwest Pipe as a truck driver. He was asleep in the sleeper unit of the truck which was being driven by Don Woodland when the truck hit a frost heave, causing Woodland to lose control of the truck, leave the road and overturn. Royce was rendered unconscious for approximately 30 hours and suffered fractured ribs and a punctured lung due to the accident. He remained in a health care facility in Plentywood, Montana, for approximately two weeks before returning to Twin Falls. Royce returned to work a short time later. In June 1972 he was involved in another accident, but suffered no injuries. He left employment with Southwest Pipe on or about June 30, 1972.

Royce was unemployed for some time, until he began working for Tupperware Company in Jerome, Idaho, where he worked from approximately October 1972 through early 1975. During this period of time he also worked part time for Morgan Lindsey Seed Company in Jerome. After he left Tupperware, he worked exclusively for Morgan Lindsey until February 1977.

Shortly after the January 20, 1972, accident, Royce began to experience severe headaches, underwent a distinct personality change, became depressed, lethargic, and had difficulty with his vision and ability to comprehend.

Between 1972 through 1976, Royce was treated by Dr. Pond in Twin Falls, Idaho. He was also seen on one occasion by Dr. O'Brien, a neurologist, in Boise, to correct a stuttering problem that had surfaced.

Royce was referred to Dr. Moress, a neurologist, and Dr. Powell, a neurosurgeon. They discovered a colloid cyst and decided that immediate surgery was necessary to remove it. After surgery, in late November 1976, complications arose which required a second operation for removal of a blood clot on December 2, 1976. Following this surgery Royce recovered physically and his headaches subsided. He returned to work for Morgan Lindsey, but his overall mental condition deteriorated and he was required to leave that employment. He has not been employed since February 1977. He suffers from short term memory lapses, some occasional violent episodes, depression and withdrawal.

Royce was referred to Dr. Worst, who continues to treat him. Dr. Worst's prognosis is that Royce's condition will remain the same. Dr. Moress, Dr. Powell, and Dr. Worst all testified that Royce is totally and permanently disabled from obtaining or retaining any kind of employment. This conclusion is supported by the testimony of Royce's supervisor at Morgan Lindsey, his brother-in-law and a vocational evaluator who also testified as to his inability to work.

A notice of injury and claim for benefits was timely filed by Royce on January 31, 1972. The claim was accepted by Southwest Pipe's surety and temporary total benefits and the majority of medical benefits were paid continuously to the date of the hearing. On March 28, 1978, the surety filed an application for hearing, seeking contribution from Industrial Special Indemnity Fund (ISIF). The surety also brought into issue the extent, if any, of Royce's permanent disability.

ISIF filed an answer on April 20, 1978, denying that Royce was permanently or temporarily disabled and stated that ISIF had no liability since Royce was not suffering a preexisting permanent physical impairment at the time of the accident.

A conference was scheduled on January 11, 1979, but was vacated upon motion by the surety. On January 5, 1979, an appearance was entered on behalf of Royce by his attorneys. Prehearing statements were filed. A hearing was scheduled on March 27, 1979, but was vacated upon stipulation

of all parties. On August 9, 1979, a hearing was held in Twin Falls. The Commission denied the surety's motion for a continuance. Royce filed his petition for attorney fees on this date.

On August 27, 1979, the Commission issued an order dismissing ISIF. On October 9, 1979, the Commission issued its findings of fact, conclusions of law and award. The Commission found that Royce was totally and permanently disabled and that he suffered from a colloid cyst which was a condition preexisting to the January 20, 1972 accident. The Commission ruled that the cyst did not constitute a physical impairment as defined by I.C. § 72–332(2) and found that the condition did not adversely affect Royce's employability prior to the January 20, 1972 accident. Based upon these findings the Commission concluded that the surety was solely responsible for payment of compensation benefits and dismissed ISIF. Attorney fees were also awarded Royce against the surety, pursuant to I.C. § 72–804. The surety filed notice of appeal on November 13, 1979. ISIF filed a motion to dismiss the appeal on January 22, 1980. The court, by order dated February 28, 1980, gave the parties the opportunity to file briefs and argue this issue at oral argument.

Four issues are presented on appeal. (1) Is the appeal timely, (2) did Royce have a permanent physical impairment within the meaning of I.C. § 72–332(2), (3) did the Commission abuse its discretion in denying the surety's motion for a continuance, and (4) did the Commission abuse its discretion in awarding Royce attorney fees?

■ The Industrial Special Indemnity Fund (hereinafter referred to as ISIF) argues that the appeal must be dismissed because the order dismissing ISIF was entered on August 27, 1979, and this appeal was not filed until November 13, 1979. I.C. § 72–718 provides:

"A decision of the commission, in the absence of fraud, shall be final and conclusive as to all matters adjudicated by the commission upon filing the decision in the office of the commission; provided,

within twenty (20) days from the date of filing the decision any party may move for reconsideration or rehearing of the decision, or *the commission may rehear or reconsider its decision on its own initiative,* and in any such events the decision shall be final upon denial of a motion for rehearing or reconsideration or the filing of the decision on rehearing or reconsideration. Final decisions may be appealed to the Supreme Court as provided by section 72–724, Idaho Code." (Emphasis added.)

While the commission initially dismissed ISIF by order dated August 27, 1979, it appears that they did not consider the order final because in its findings of fact, conclusions of law and award, dated October 9, 1979, the commission dismisses ISIF and bases that dismissal upon those findings of fact. Therefore the August order was not a final order and the appeal is timely.

■ The court is asked once again to interpret the meaning of permanent physical impairment as contained in I.C. § 72–332(2) as it existed on the date of the injury. I.C. § 72–332(2) states: "As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." Since the action by the Commission in this case several opinions have been issued by this court interpreting the meaning of the statute. *Gugelman v. Pressure Treated Timber Co.,* 102 Idaho 356, 630 P.2d 148 (1981); *Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 629 P.2d 696 (1981). In those cases we held that actual hindrance to employment is not required and that an objective test must be utilized by the Commission in its determination as to whether a claimant has a preexisting physical impairment. In *Curtis* it was stated:

" 'Permanent physical impairment' is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemploy-

ment. A hindrance or obstacle to obtaining employment or reemployment would exist if the preexisting permanent condition would reasonably cause a potential employer to be reluctant to hire a person because of concerns such as the person's preexisting condition made him a less capable worker, a greater risk in terms of getting injured, or a greater risk in terms of the amount of potential permanent disability that the worker would suffer from an injury. Actual hindrance to one's attempts at obtaining employment is not required." 629 P.2d at 701.

The question presented under the facts of this case is whether a reasonable employer would be reluctant to hire Royce. In footnote 3 to the *Gugelman* opinion we stated, "[t]he ISIF points out that many of the states require that the employer have knowledge of the condition for the ISIF to be liable. In this regard we need only note that Idaho has no requirement of such knowledge and we will not judicially impose such a requirement."[1] We adhere to that holding, that employer knowledge is not a requirement to constitute a preexisting physical impairment. However, to constitute a "hindrance to employment" the condition must be manifest. "Manifest" means that either the employer or employee is aware of the condition so that the condition can be established as existing prior to the injury. The use of this definition is within what this court stated in *Cox v. Intermountain Lumber*, 92 Idaho 197, 200, 439 P.2d 931, 934 (1968).

> "This court and the parties agree as to the ultimate purpose of the indemnity fund. Prior to its creation, an employer who hired a handicapped worker was subject to the responsibility of paying for total permanent disability compensation to an employee rendered totally and permanently disabled because of his pre-existing handicap coupled with a subsequent industrial injury. See: *McNeil v. Panhandle Lumber Co.*, 34 Idaho 773, 203 P. 1068 (1921). The fund was established to relieve an employer of this burden.

> The underlying policy of the fund is to allow an employer to hire a handicapped person with the obligation only to pay compensation for an industrial injury to the handicapped person such amount as the employer would have had to pay an employee who had not been handicapped, with the indemnity fund assuming responsibility for the balance of the total permanent disability." (Citations omitted.)

See also, *Gugelman, supra*. If the employer has knowledge of the preexisting condition he would not be discouraged from hiring the person knowing that under I.C. § 72–332 the

> "employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the special industrial indemnity fund."

If the employer does not have knowledge of the preexisting condition, but the employee does, the employer will not be burdened by the lack of knowledge because it can be established that it was a preexisting condition thereby invoking ISIF liability. However, if no one knows of the condition it could not influence an employer and cannot be considered a hindrance to employment. Therefore, we hold that a preexisting physical impairment within the meaning of I.C. § 72–332(2) is any condition which reasonably could constitute a hindrance or obstacle to employment or reemployment when all known facts are or could reasonably be disclosed to the employer.

■ Although the Industrial Commission found that the colloid cyst was undoubtedly present in claimant's brain prior to the January 20, 1972 accident, nonetheless it held that it did not constitute a physical impairment. The Commission stated "that the evidence presented in this case indicates

---

1. Although in the *Gugelman* opinion it states "for the employer to be liable" this was a typographical error and it should read as quoted in the text.

that the cyst was asymptomatic prior to the January 20, 1972 accident, but symptomatic thereafter. In fact, it appears that neither claimant nor anyone else had any indication that the cyst existed, and it appears that the cyst did not adversely affect claimant prior to the January 20, 1972 accident." In summary, the Commission found that the testimony of the doctors in this case indicates that while the accident did not cause the occurrence of the cyst, it is common for such lesions to become symptomatic incident to head trauma. All three of the doctors testified that the head trauma sustained by claimant in the accident triggered the onset of clinical symptoms.

The Commission applied the subjective test, which was rejected in *Gugelman* and *Curtis*, in its determination that Royce did not have a preexisting physical impairment. However, under our holding, the Commission did not err since claimant's condition had not manifested itself prior to the January 20, 1972 accident, it was not a preexisting physical impairment within the meaning of I.C. § 72–332(2). Consequently, the employer and its surety are liable for the full amount of Royce's disability benefits.

■ We find no abuse of discretion in the Commission's denial of the surety's motion for a continuance of the hearing to obtain the deposition of Dr. O'Brien. The surety filed its application for a hearing with the Commission on March 28, 1978, but the hearing was not held until August 9, 1979. The Commission determined that this lapse of time was ample for the surety to have obtained the deposition of Dr. O'Brien if it felt the deposition was necessary and that the surety had already produced a great deal of evidence relative to the relationship between the accident and the claimant's disability. We find no abuse of discretion.

■ The Commission did not abuse its discretion in awarding claimant attorney fees. I.C. § 72–804 provides that the Commission may award attorney fees if it determines that the employer or its surety contested a claim for compensation without

reasonable ground. The Commission determined that the surety had ample evidence available to it to show a direct cause and effect relationship between the January 20, 1972 accident and claimant's injury. It is our conclusion that the record supports the Commission's determination. In consideration of the medical reports, letters by Dr. Morress and Worst, and the deposition of Dr. Powell, appellants could not reasonably have believed that claimant was not totally and permanently disabled. As early as 1977 the surety was informed of the nature and extent of claimant's disability. It appears that the surety's only real contention was the extent of which ISIF would be liable. The surety in its application for hearing raised the issue of the extent, if any, of Royce's disability, which required Royce to protect his interest by being represented by counsel. Based on the facts before the Commission, we hold that the Commission did not abuse its discretion or err in awarding claimant attorney fees.

In this appeal the Commission held that claimant Royce was totally and permanently disabled and entered its award on that basis. The Commission also ruled that the colloid cyst from which claimant suffered did not constitute a physical impairment as defined by I.C. § 72–332(2) and thus the employer's surety was solely responsible for payment of the compensation benefits and dismissed ISIF. No issue was raised on this appeal challenging the determination that Royce was totally and permanently disabled.

Basically, this was an appeal by the surety to shift a part of the financial burden of Royce's award from the surety to ISIF. Royce was thus an unwitting participant in this appeal wherein he had to protect his position by being represented by counsel, yet had no chance of gaining from the litigation. In such a situation, it is only proper that his request for attorney fees on appeal be granted. Although attorney fees were not requested in claimant's brief filed with this court, they were requested at oral

argument. Appellant raised no objection to the request.[2]

The order and award of the Industrial Commission is affirmed and remanded to the Industrial Commission for determination of attorney fees. Respondent ISIF is awarded its costs. Royce is awarded his costs and attorney fees for this appeal.

DONALDSON, J., concurs.

SHEPARD, J., concurs in the result.

BAKES, Chief Justice, concurring in part and dissenting in part.

I concur in all of the majority opinion, except that portion at the end granting the claimant Royce attorney's fees on appeal. No timely claim was made for attorney's fees by claimant as required by Idaho Appellate Rule 41; therefore, I would deny the award of attorney's fees. Otherwise, I concur in the majority opinion.

BISTLINE, J., concurring and dissenting.

I.

Although I join the Court's opinion wherein it sustains the trial court's award of attorney's fees and grants attorney's fees on appeal[1] to claimant, I cannot agree with the Court's holding that Royce did not have a pre-existing permanent physical impairment within the meaning of I.C. § 72–332(2). The Court's holding simply ignores one portion of the statute. I.C. § 72–332(2) provides: "As used in this law, 'permanent physical impairment' means any permanent condition, . . . of such seriousness as to constitute a hindrance or obstacle to obtaining employment *or to obtaining reemployment if the employee should become unemployed*." (Emphasis added.) Obviously Royce's injury, coupled with the latent physical impairment triggered by the injury, constitutes a hindrance to his being reemployed henceforth.

In support of its decision, the Court relies on and quotes from *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981). Better, so it would seem, the Court should at least give equal attention to the contemporaneous and slightly later case of *Gugelman v. Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981), in which this Court further refined the definition of permanent physical impairment. In *Gugelman*, the Court stated:

"As readily seen, the version of the statute which is our concern (pre-1978), on its face does not define 'permanent physical impairment' as a condition which *has been* a hindrance to obtaining employment. Indeed, such a reading would make the last part of the sentence, 'or to obtaining reemployment if the employee should become unemployed,' totally meaningless. This phrase obviously contemplates I.S.I.F. liability where the pre-existing condition is such that it reasonably could be expected to affect future attempts to obtain employment, but where that exact situation did not arise and has not arisen. The test apparently suggested is that the worker might well be expected to encounter difficulty finding another job in the event that he did become unemployed. Without this phrase, the statute could possibly be read as covering *actual* experiences in obtaining employment; with it, however, the intent obviously is to define 'permanent physical impairment' as based on the effect the condition is likely or reasonably anticipated to have on obtaining employment. This reading also prevents I. S. I. F. liability from being premised on the fortuity of a claimant's good or bad luck in obtaining employment." 102 Idaho at 358, 630 P.2d at 150–51.

argument. To my mind, the views expressed by Chief Justice Bakes, concurring and dissenting, are far too technical and, I might add, somewhat in conflict with those expressed recently in *State v. Dennard*, 102 Idaho 824, 826, 642 P.2d 61, 63 (1982) (Bakes, C. J., dissenting).

2. Attorney fees incurred as a result of this appeal by claimant are awarded pursuant to I.C. § 72–804, to be fixed by the Industrial Commission. *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981).

1. Although the claimant should have requested attorney's fees on appeal in his original brief, *see* I.A.R. 41, he did raise the issue at oral

The Court in today's opinion does note this specific language also found in *Gugelman* :

"The I. S. I. F. points out that many of the states require that the employer have knowledge of the condition for the I. S. I. F. to be liable. In this regard we need only note that Idaho has no requirement of such knowledge and we will not judicially impose such a requirement." *Id.* at 360 n. 3, 630 P.2d at 152 n. 3.

While the Court professes continued adherence to that holding, it nevertheless now imposes a requirement that the pre-existing physical impairment have manifested itself prior to the employment; while conceding the verity of *Gugelman's* rule that the pre-existing improvement need not have been made known to the employer, it now sees some reason, to my mind not satisfactorily explained, to hold that the employee at least should have become aware of it. The Court is clearly legislating, and in my view eroding the credibility it established by the *Gugelman* and related holdings. There is no more reason for judicially imposing a "manifestation requirement" (knowledge on the part of someone) than there is for imposing a requirement of knowledge on the part of the employer, which latter action the Court did not take in *Gugelman.* For certain the statute contains neither of these requirements, yet 'twould have been a most simple matter for the legislature to have so worded its enactment. Perhaps it may be yet persuaded to do so, but it will be acting against the best interests of the working people and against the overall scheme having for its purpose the employment, *and reemployment* of those less fortunate who have been dealt less than a physically full hand, which they only discover on the event of an industrial accident which ignites a latent impairment.

In imposing a manifestation requirement the Court reasons: " 'Manifest' means that either the employer or employee is aware of the condition *so that the condition can be established as existing prior to the injury.*" (Emphasis added.) By the use of such language it is surmised that the Court's concern is that absent some observable manifestation prior to the industrial injury, who, then, can establish that the condition was indeed pre-existing. In this very case, the condition was not known to either the employee or the employer, yet the medical testimony left no doubt that the condition pre-existed the claimant's injury, and that the injury triggered the lighting up of the pre-existing physical impairment which theretofore was known to no one. If the Court's concern is with other claimants in other compensation cases, is it not true that the claimant or, as in the present contest, the employer and its surety will bear the burden of proving that the condition did in fact exist and did pre-exist the injury? Such speculative worry is true in all such cases, and in civil tort actions, as well, but cannot serve as a reason for the Court's imposition of a manifestation requirement.

Similarly, the Court states: "If the employer does not have knowledge of the pre-existing condition, but the employee does, the employer will not be burdened by the lack of knowledge because it can be established that it was a pre-existing condition thereby invoking I. S. I. F. liability. However, if no one knows of the condition it could not influence an employer and cannot be considered a hindrance to employment." The Court's reasoning is not readily understood. If I understood it, I would attempt a response. I mention only that in the preceding cases, *Curtis* and *Gugelman,* we heard argument that an employer not advised of or knowing of the employee's disability at the time of hiring, could not be said to have brought himself under the beneficient provisions of I.C. § 72–332(2), but were not persuaded. As in this very case, the fact that the condition existed prior to the injury, regardless of whether the employer *or the employee* had knowledge of that condition, was capable of proof, and was proved.

*Gugelman* recognized that the I. S. I. F. was created for two purposes, "both to encourage the hiring of the handicapped *and,* as a corollary, *to relieve employers of the unfair burden of paying total permanent disability compensation when only part of*

the disability was due to the industrial accident." 102 Idaho at 360, 630 P.2d at 152 (emphasis added). The Court's opinion in this case, however, only effectuates the first purpose, and totally ignores the second. Since the existence of a condition of which the employer is unaware, as in *Gugelman*, cannot influence the employer's hiring decisions, a fortiori, it is at once clear that the second purpose necessarily influenced the Court's reasoning, and prompted the decision in *Gugelman*. This instant case presents no reason for reaching a different conclusion. An employer should not be burdened by the lack of knowledge of a pre-existing condition at any time—provided only that the claimant or his employer can establish that the condition did in fact exist prior to the industrial accident. No reason exists to draw or attempt a distinction between those cases in which the employee knew of the pre-existing condition, but did not inform the employer, and those cases in which neither the employee or the employer knew of the condition. It is indisputable that in neither situation can the pre-existing condition influence the hiring decision of the employer. If it is unfair in one situation to impose on the employer the cost of paying for total disability benefits where the total and permanent disability arose only in part from the industrial accident, it is equally unfair in the other. The I. S. I. F. was established at least in part, for the purpose of relieving such an unfair burden to the employer. Not only is it inappropriate for this Court to impose a manifestation requirement, but it defeats at least in part the very purposes for which the I. S. I. F. was created.