899 P.2d 445

**Wayne DOHL, Claimant–Respondent,**

**v.**

**PSF INDUSTRIES, INC., Employer, and State Insurance Fund, Surety, Defendant–Appellants,**

**and**

**State of Idaho, Industrial Special Indemnity Fund, Defendant–Respondent.**

No. 21290.

Supreme Court of Idaho,
Boise, March 1995 Term.

July 26, 1995.

Hyde, Wetherell, Bray, Haff & French, Chtd., Boise, for appellant. Michael E. Wetherell argued.

Bohner, Chasan, Walton & Bauer, Boise, for respondent Dohl. Andrew M. Chasan argued.

Mallea & Scrivner, Boise, for respondent I.S.I.F. Wesley L. Scrivner argued.

McDEVITT, Chief Justice.

This is an appeal from an order of the Industrial Commission (Commission). The Commission determined that Wayne Dohl (Dohl) was totally and permanently disabled under the odd-lot doctrine and apportioned the non-medical benefits between the Idaho Industrial Special Indemnity Fund (I.S.I.F.), Dohl's employer, PSF Industries, Inc., and the employer's surety, the State Insurance Fund. (PSF Industries and the State Insurance Fund will be collectively referred to as the S.I.F.) The Commission determined that medical benefits were not apportionable and concluded that the S.I.F. was responsible for payment of all of Dohl's medical benefits which resulted from the industrial injury at issue. The issue in this appeal is whether the Commission properly concluded that medical benefits are not to be apportioned in an odd-lot disability case involving the I.S.I.F. under Idaho worker's compensation law. We affirm the decision of the Commission in part and reverse in part.

## I.

### FACTS AND PROCEDURE.

Dohl suffered several back injuries from 1978 to 1981 and underwent a number of back surgeries. Dohl had been employed as a union boilermaker and welder his entire working life and continued to work in that occupation after his injuries, despite his physician's recommendations that Dohl seek other work. On November 7, 1990, Dohl reinjured his back while working for PSF Industries, Inc. Dohl was holding a pipe while trying to remove a valve, when a co-worker, who was holding the other end of the pipe, dropped his end. Dohl held on to the pipe to prevent the valve from falling on other workers. When the pipe fell, Dohl felt a pop in his back and pain in his lower back and right leg.

After the November 1990 injury, Dohl saw Dr. James Murphy in Butte, Montana for his back injury. Dr. Murphy treated Dohl over the next few months. In March 1991, Dr. Murphy released Dohl to return to work in June 1991, but advised Dohl not to return to work as a welder. Dr. Murphy recommended that Dohl be retrained for a sedentary job. In September 1991, Dohl saw Dr. Michael Lahey. Dr. Lahey prescribed pain medication for Dohl's back pain and an orthopedic appliance to straighten Dohl's back. In January 1992, Dr. Lahey released Dohl to work at light duty jobs with strict physical

restrictions and stated that Dohl should not return to his employment as a boilermaker. Dr. Lahey evaluated Dohl at an impairment rating of 13% of the whole person. Dr. Lahey did not apportion any impairment to a pre-existing condition, but stated that Dohl's injury and complaints were due to his pre-existing condition with a repeat exacerbation. As of March 16, 1992, Dr. Lahey reported that Dohl had reached maximum medical improvement and that Dohl's condition had stabilized, but indicated that Dohl might require medical follow-ups and possible surgery in the future.

In June and December 1991, Dohl saw Dr. Richard Knoebel. Dr. Knoebel examined Dohl in June 1991 and at that time did not believe that Dohl had reached maximum medical improvement. In December 1991, Dr. Knoebel diagnosed Dohl as having a chronic and progressively degenerating back condition prior to the November 1990 injury and that the November 1990 injury aggravated Dohl's pre-existing condition. Dr. Knoebel gave Dohl a 4% permanent impairment rating of the whole person resulting from the November 1990 injury and a 14% permanent impairment of the whole person as a result of prior injuries. Dohl's total permanent impairment rating was 18% of the whole man.

In May 1992, Dohl saw Dr. Jake Taverna for treatment of his back problems. Dohl continued to see Dr. Taverna through August 1993. In November 1992, Dr. Taverna opined that Dohl was permanently disabled from any gainful employment. In December 1992, Dr. Taverna recommended that Dohl refrain from any lifting, bending, stooping, or carrying. Also in December 1992, Dohl was evaluated by a panel of physicians consisting of Dr. Thomas Henson and Dr. Richard Knoebel. The panel reaffirmed Dr. Knoebel's earlier impairment rating but believed that Dohl's prescription medication was for his pre-existing condition and not for the industrial accident of November 1990.

On December 2, 1992, Dohl filed a worker's compensation complaint against his employer and his employer's surety for the November 1990 injury. The referee appointed by the Commission concluded that Dohl suffered a permanent partial impairment of 18% of the whole person, 4% of which was due to the November 1990 injury. In determining Dohl's impairment rating, the referee relied on the rating provided by Dr. Knoebel. According to the referee:

Dr. Knoebel is the only physician who provided an impairment rating for the 1990 injury using the AMA guidelines and specifically taking into consideration how the past injuries related to the current injury. Therefore, the Referee finds the impairment rating of Dr. Knoebel credible in that Claimant suffered from an impairment of 4% of the whole person due to his November 7, 1990 injury and a 14% impairment from prior injuries for a total impairment of 18% of the whole person.

The referee also determined that the date of Dohl's maximum medical stability was March 16, 1992, based on the medical testimony of Drs. Lahey and Knoebel. The referee did not find the testimony of Dr. Taverna convincing enough to outweigh the opinions of Drs. Lahey and Knoebel. Based on this determination, the referee concluded that total temporary disability benefits would cease as of the date of maximum medical stability, March 16, 1992, and any permanent disability benefits would begin on that same date. The referee also computed the amount of Dohl's weekly benefits based on I.C. §§ 72–419(6), 72–408.

The referee next concluded that Dohl was totally and permanently disabled under the odd-lot doctrine. The referee analyzed all three methods of determining odd-lot disability and determined that Dohl had attempted other types of employment without success, that both Dohl and vocational counselors had made a bona fide search for work but found no work available to Dohl due to his deteriorating back condition, and that, in view of Dohl's work qualifications, the lack of available light duty work in the geographical area, and Dohl's physical restrictions, further efforts to find employment would have been futile. Based on these findings, the referee concluded that Dohl was totally and permanently disabled under the odd-lot doctrine.

The referee next considered whether Dohl could recover against the I.S.I.F. pursuant to I.C. § 72–332. The referee relied upon the

elements set forth in *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 155, 795 P.2d 312, 317 (1990), for apportioning liability in a total permanent disability case under I.C. § 72–332. The referee found (1) that based on the examining physicians' assessments of Dohl's injuries, Dohl suffered from a pre-existing impairment; (2) that Dohl's condition was manifest as established by Dohl's claims to his physicians of his back "flare ups" between 1978 and 1988 and his requests that other workers do heavy lifting for him; (3) that Dohl's impairment was a subjective hindrance to Dohl's obtaining employment based on Dohl's attitude toward his condition, non-medical factors, expert opinions, employers' reluctance to hire employees with histories of back injuries, Dohl's prior work history of performing strenuous labor, and Dohl's return to his profession of a boilermaker for financial reasons despite his physician's advice to the contrary; and (4) that based on Dr. Knoebel's diagnosis and impairment ratings and the reports of Drs. Lahey and Murphy, Dohl was rendered totally and permanently disabled due to the combination of the pre-existing impairment and the November 1990 injury. Based on these findings, the referee concluded that Dohl was entitled to recover against the I.S.I.F.

The referee went on to apportion the amount of liability between the I.S.I.F. and the S.I.F. The referee determined that Dohl's impairment was 18% of the whole person, 4% being attributable to the November 1990 injury and 14% to Dohl's pre-existing condition. Based on this rating, the referee concluded that 77.8% of the total 18% impairment was attributable to the pre-existing impairment and 22.2% was due to the November 1990 injury. The referee determined that non-medical factors accounted for 82% of Dohl's disability. The referee then apportioned the liability for the non-medical portions of Dohl's injury between the I.S.I.F. and the S.I.F. in the same proportion as their percentages of responsibility for the impairment ratings. The referee did not apportion the medical benefits and concluded that the S.I.F. was responsible for the payment of the cost of all of Dohl's medical care resulting from his industrial injury.

The Commission adopted the referee's findings of fact, conclusions of law, and proposed order on February 28, 1994. The Commission then issued an order on reconsideration, in response to S.I.F.'s motion, in which the Commission corrected several ministerial errors, altered its finding that the S.I.F. paid 25% of the medical bills to a finding that the S.I.F. paid 100% of the bills until March 16, 1992 and then paid 25% of the medical bills after that time, and declared that it had applied the version of I.C. § 72–332 in effect in 1990 (the 1990 version), rather than 1991 amended version of I.C. § 72–332. The Commission reaffirmed the referee's decision to not apportion medical benefits. The Commission retained jurisdiction to determine whether any future medical costs would be owed. The Commission then issued a supplemental order on reconsideration, in response to a motion by the S.I.F., addressing the S.I.F.'s contention that the Commission misstated the record. The Commission clarified its previous findings as supported by the record and declined to change its order requiring the S.I.F. to pay medical costs. The S.I.F. appeals the order of the Commission apportioning only non-medical benefits.

## II.

## DISCUSSION.

■ Respondents, initially contend that this appeal should be dismissed due to the Commission's retention of jurisdiction over future medical benefits. We disagree. On January 10, 1995, this Court granted the S.I.F.'s motion for appeal by permission pursuant to I.A.R. 12(a) and denied Dohl's motion to dismiss. Because this Court granted the S.I.F.'s motion for permissive appeal, we hold that the S.I.F.'s appeal in this matter is properly before this Court.

Although the S.I.F. frames the issues on appeal as eleven separate issues, the S.I.F. presents only one question for consideration by this Court: whether the Commission erred in its determination that medical benefits were not apportionable under the 1990 version of I.C. § 72–332. The S.I.F. argues that the Commission misconstrued I.C. § 72–

332 and erred in failing to apportion medical benefits between the S.I.F. and the I.S.I.F. We note that while this Court has often addressed the question of the apportionment of liability for totally and permanently disabled employees who fall within the odd-lot doctrine where the I.S.I.F. is involved, the specific question of whether the costs of medical benefits are apportionable between the I.S.I.F. and the employer/surety is of first impression before this Court.

Because Dohl's injury occurred in 1990, prior to the enactment of the 1991 amendments, we conclude that the pre–1991 amended version of I.C. § 72–332 is the proper version of the statute to apply in this case.

 When this Court reviews decisions of the Industrial Commission, our review of the Commission's findings of fact is limited to whether the findings are supported by substantial and competent evidence. *Lethrud v. Industrial Special Indem. Fund,* 126 Idaho 560, 563, 887 P.2d 1067, 1070, (1995); *Pomerinke v. Excel Trucking Transp.,* 124 Idaho 301, 305, 859 P.2d 337, 341 (1993). However, questions of law are freely reviewed by this Court. Idaho Const. art. V, § 9; I.C. § 72–732; *Langley v. Industrial Special Indem. Fund,* 126 Idaho 781, 890 P.2d 732, 735 (1995); *Reiher v. American Fine Foods,* 126 Idaho 58, 60, 878 P.2d 757, 759 (1994). Because the interpretation of a statutory provision is a question of law, we exercise free review over the Commission's interpretation of I.C. § 72–332(1) and its determination, under its interpretation, that medical benefits are not apportionable under the statute.

 The purpose of establishing the I.S.I.F. was to encourage employers to hire older and partially disabled employees and to spread the risks of hiring those employees among employers. *Carey v. Clearwater County Rd. Dep't,* 107 Idaho 109, 117, 686 P.2d 54, 62 (1984). This Court has interpreted the second injury fund statutes as intending to make employers liable only for the portion of the employee's disability caused by the industrial injury, and any additional injury that was due to a pre-existing condition of the employee would be covered by the second injury indemnity fund. *Id.; see Horton*

*v. Garrett Freightlines, Inc.,* 115 Idaho 912, 916–17, 772 P.2d 119, 123–24 (1989).

I.C. § 72–332(1) (1981) provided:

> If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account.

In this version of the statute, an employer and its surety would be liable for payment of "compensation benefits" for only those injuries caused by the current industrial accident, and the employee would be compensated for the "remainder of his compensation benefits" by the I.S.I.F. In 1991, the legislature amended I.C. § 72–332(1) to provide that the injured employee would still receive "compensation benefits" from the employer/surety for the injuries caused by the current industrial accident, but would be compensated for the "remainder of his *income benefits*" by the I.S.I.F. (emphasis added). "Compensation" benefits, as defined in the worker's compensation laws specifically include medical benefits. I.C. § 72–102(6) ("'Compensation' used collectively means any or all of the income benefits and the medical and related benefits and medical services."). "Income benefits," on the other hand, are defined as "payments provided for or made under the provisions of this law to the injured employee disabled by an injury or occupational disease, or his dependents in case of death, *excluding medical and related benefits.*" I.C. § 72–102(13) (emphasis added).

The Commission applied the 1990 version of I.C. § 72–332, and not the 1991 version of the statute. The Commission interpreted the legislature's substitution of the word "income" for "compensation" in the 1991 amendments to be an expression of the legislature's original intent and an explanation of the meaning of the word "compensation" as it was previously used in the 1990 statute. Under the Commission's interpretation of I.C. § 72–332(1), the term "compensation benefits" is interchangeable with the term "income benefits" such that the terms share the same definition. We disagree with the Commission's interpretation.

 Statutes are to be construed to ascertain and give effect to the purpose of the legislation and to give force and effect to every part of the provision. *Ada County v. Roman Catholic Diocese,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). Under the definitional provisions of Title 72, medical benefits are specifically included in the definition of "compensation," whereas the definition of "income benefits" specifically excludes medical benefits from its definition. I.C. §§ 72–102(6), (13). For us to interpret the terms "compensation" and "income benefits" to denote the same definition, would render meaningless the definitional provisions of the Idaho worker's compensation laws and would violate the long standing rule in Idaho that the legislature's amendment of a statute indicates an intent of the legislature to change the meaning of the provision. *Gunter v. Board of Trustees Pocatello School Dist. No. 25,* 123 Idaho 910, 914, 854 P.2d 253, 257 (1993). We will not presume that the legislature performed the idle act of enacting a superfluous statute. *Sweitzer v. Dean,* 118 Idaho 568, 572, 798 P.2d 27, 31 (1990). The legislature's inclusion of medical benefits within the definition of "compensation benefits" clearly indicates the legislature's intent to include medical benefits in the amounts to be paid by the I.S.I.F. to an odd-lot employee under the 1990 version of I.C. § 72–332(1).

No Idaho cases have specifically addressed the issue of whether medical benefits are apportionable between the employer/surety and the I.S.I.F. in an odd-lot disability case. However, in *Carey v. Clearwater County Rd. Dep't,* 107 Idaho 109, 686 P.2d 54 (1984), this Court established a formula for the apportionment of the non-medical portion of liability for an employee's disability between the I.S.I.F. and the employer/surety where the employee was totally and permanently disabled under the odd-lot doctrine. The *Carey* Court stated that:

> We believe that the appropriate solution to the problem of apportioning the non-medical disability factors, in an odd-lot case where the fund is involved, is to prorate the non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment.

*Id.* at 118, 686 P.2d at 63. Although the formula in *Carey* was used to apportion liability for the non-medical portion of the injured employee's disability, we believe the same method is properly used to apportion medical benefits under the 1990 version of I.C. § 72–332. This holding is consistent with the policy behind the creation of the I.S.I.F. to allow an employer

> "'to hire a handicapped person with the obligation only to pay compensation for an industrial injury to the handicapped person such amount as the employer would have had to pay an employee who had not been handicapped, with the Indemnity Fund assuming responsibility for the balance of the total permanent disability.'" *Royce v. Southwest Pipe of Idaho,* 103 Idaho 290, 294, 647 P.2d 746, 750 (1982) (quoting *Cox v. Intermountain Lumber,* 92 Idaho 197, 200, 439 P.2d 931, 934 (1968)).

 We thus conclude that medical benefits are to be apportioned between the I.S.I.F. and the S.I.F. in the same proportion as the percentages of impairment were found to have resulted from the current injury and the pre-existing injury. We leave unresolved the question of apportionment under the 1991 amended version of I.C. § 72–332. In the instant case, the Commission concluded that Dohl's impairment was 18% of the whole person, 4% attributable to the current injury, and 14% attributable to Dohl's pre-existing condition. The Commission determined that 77.8% of the 18% impairment was due to Dohl's pre-existing impairment and that 22.2% was due to the November 1990 injury.

Because we conclude as a matter of law that the medical benefits are to be apportioned in the same proportion as the determined responsibility of the I.S.I.F. and the S.I.F. for the non-medical portions, Dohl's medical benefits are to be allocated 77.8% to the I.S.I.F. and 22.2% to the S.I.F. Because the S.I.F. has paid 25% of Dohl's medical costs since the date of Dohl's determined medical stability, the S.I.F. is to be reimbursed 2.8% of the costs already paid, and the I.S.I.F. is responsible for payment of the remainder of those medical costs.

### III.

### CONCLUSION

The order of the Industrial Commission is affirmed, except as to the apportionment of medical factors between the I.S.I.F. and the S.I.F. The case is remanded to the Commission for entry of an order consistent with this opinion. Costs on appeal are awarded to the S.I.F. to be paid by the I.S.I.F.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.